

**Z**ACHARY **W. C**ARTER
*Corporation Counsel*

# T**HE** C**ITY OF** N**EW** Y**ORK**
## LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**A**MY **R**OBINSON
*Spec. Assistant Corporation Counsel*
*Phone: (212) 356-3518*
*Fax: (212) 356-3509*
*arobinso@law.nyc.gov*

November 13, 2018

Honorable Analisa Torres
United States District Court
500 Pearl Street
New York, New York 10007

      Re:    <u>Benjamin Case, et al. v. City of New York, et al.</u>, 14-CV9148 (AT) (BM)

Your Honor:

      I am an attorney in the Office of Zachary W. Carter, Corporation Counsel of the City of New York, and assigned to represent defendants in the above-referenced matter. Defendants submit this pre-motion letter per the Court's order dated August 1, 2018 (Dkt. No. 112) and Your Honor's Individual Rules, § III(C), to request a pre-motion conference in anticipation of their motion for summary judgment under Fed. R. Civ. P. 56, or alternatively a briefing schedule. As per Your Honor's Individual Rules, defendants' 56.1 statement and plaintiffs' corresponding counterstatement are attached.

      By way of background, plaintiffs' claims stem from their arrests during the "Shut Down Wall Street" Occupy Wall Street ("OWS") protests on November 17, 2011. Video shows plaintiffs' conduct leading up to their arrests; namely sitting in the middle of an intersection in the Wall Street area during morning rush hour (Klein), laying in the middle of an intersection in the Wall Street area during morning rush hour (Case) and blocking a sidewalk from building to curb in the Wall street area during morning rush hour (Kushneir). Case testified that on November 17, 2011, he was involved in shutting down Wall Street, and understood "shutting down Wall Street" to mean clogging the streets and sidewalks in the Wall Street area. When asked if she intended to shut down the Stock Exchange, Klein testified that she thought, "that a rally in front of the stock exchange could temporarily block access to it." Kushneir testified that he intended to participate in the process of shutting down Wall Street on November 17, 2011, and that part of the protesting on this date included blocking streets or sidewalks. Clear video evidence supports plaintiffs' statements.

      Defendants filed their motion to dismiss pursuant to Fed. R. Civ. P. 12(b) on October 28, 2015. (Dkt. No. 51). On February 10, 2017, the Court issued its memorandum and order, granting in part and denying in part defendants' motion. (Dkt. No. 72). The remaining claims include, false arrest (Kushneir), First Amendment retaliation (Klein and Kushneir), First Amendment based upon unconstitutional time, place and manner restriction, excessive detention,

fair trial and Monell. Defendants now request leave to file a motion for summary judgment on plaintiffs' remaining claims.

Here, there was probable cause to arrest plaintiff Kushneir, inter alia, under NY PL §240.20(5). PL§ 240.20(5) makes it a violation when someone "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof he obstructs pedestrian or vehicular traffic." Video and video stills show plaintiff Kushneir and others formed a line, standing side by side, with painted, open cardboard boxes fully blocking a sidewalk from building to curb one block from the Stock Exchange. Kushneir was given numerous orders to comply, and as can be seen on video, he is just a couple of feet from Chief Esposito, the highest ranking uniformed member of the NYPD, who was one of the officers giving warnings and instructions. The record shows that the warnings and instructions were sufficiently communicated and that Kushneir was given more than a reasonable opportunity to comply. Chief Esposito observed more than one pedestrian who tried to come through the group blocking the sidewalk but was unable to do so. As shown above, plaintiff admits that he intended to block sidewalks on November 17, 2011, and video evidence shows he did just that.

Even if probable cause was lacking for Kushneir's arrest, defendants Esposito and Maldonado are entitled to qualified immunity. Here, the officers did not violate any clearly established law, and it was objectively reasonable for them to believe that Kushneir's arrest was lawful given plaintiff's conduct leading up to his arrest; namely blocking a sidewalk from building to curb one block from the Stock Exchange during morning rush hour as he testified he intended to do. See Garcia v. Doe, 779 F.3d 84, 92 (2d Cir. 2014).

Plaintiffs' First Amendment retaliation claim fails for three reasons. First, plaintiffs' retaliation claim fails as probable cause existed for their arrests and qualified immunity shields the actions of the officers. Probable cause is a complete defense to a claim of First Amendment retaliation. Fabrikant v. French, 691 F.3d 193, 215-216 (2d Cir. 2012). The same holds true to the extent the Court finds qualified immunity for plaintiffs' arrests. "As with false-arrest claims, arguable probable cause triggers qualified immunity against [First Amendment] retaliation claims." Depew v. City of New York, 15 cv 3821 (AT), p. 8 (S.D.N.Y. Dec. 13, 2016)(collecting cases).

Second, plaintiffs cannot show that defendants' actions in arresting them were motivated by any expressive protected conduct. Centrally, even on plaintiffs' versions of events, it is clear that what led to their arrests was not innocuous expressive conduct, but deliberate attempts to defy the police when police, (1) attempted to clear two intersections in the Wall Street area entirely blocked by protesters, including Case and Klein, so that blocked traffic could continue to flow and (2) attempted to clear one sidewalk in the Wall Street area, which was fully blocked from building to curb by protesters, including Kushneir. It is unclear how the acts of sitting and laying in the middle of busy intersections and fully blocking an entire sidewalk could be sufficiently "communicative" to enjoy First Amendment protections, let alone how they would be clearly established to overcome qualified immunity on the same question. Clark v. Comm. for Creative Non-Violence, 468 U.S. 288, 294 (1984). Moreover, plaintiffs' own testimony, as well as indisputable video, show that their decisions to prevent the officers from performing their official functions led to their arrests, not expressive conduct.

Third, in order to survive summary judgment on a First Amendment retaliation claim, a plaintiff must show specific proof of improper motivation. Curley v. Village of Suffern, 268 F.3d 65, 73, (2d Cir. 2001). The mere fact that these incidents occurred during OWS protests is not by itself sufficient evidence of improper motivation to survive defendants' motion for summary judgment. See Higginbotham v. Sylvester, 218 F. Supp. 3d 238, 245-46 (S.D.N.Y. 2016), aff'd, No. 16-3994, 2018 U.S. App. LEXIS 20637 (2d Cir. 2018); Lebowitz v. City of New York, 2014 U.S. Dist. LEXIS 25515, at *4 (S.D.N.Y. 2014), aff'd, 606 F. App'x 17 (2d Cir. 2015). Accordingly, plaintiffs cannot establish their First Amendment retaliation claim, and this claim necessarily must fail.

Plaintiffs' time, place, and manner theory must also be dismissed. The government may impose reasonable content-neutral restrictions on the time, place, or manner of protected speech." Lederman v. N.Y.C. Dep't of Parks & Recreation, 731 F.3d 199, 202 (2d Cir. 2013), cert. denied, 134 S. Ct. 1510, 188 L. Ed. 2d 376 (2014); see, e.g., Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989). Such restrictions must be narrowly tailored to serve a significant government interest and leave open ample alternative channels for communication. Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011). The orders given to plaintiffs were a reasonable time, place and manner restriction as the orders were narrowly tailored to further the government's legitimate interests. The Second Circuit has recognized the government's duty to keep public spaces safe and free of congestion as a significant interest. Marcavage v. City of New York, 689 F.3d 98, 104 (2d Cir. 2012) ("Government certainly has a significant interest in keeping its public spaces safe and free of congestion.") (quoting Bery v. City of New York, 97 F.3d 689, 697 (2d Cir. 1996)); accord Mastrovincenzo v. City of New York, 435 F.3d 78, 100 (2d Cir. 2006) ("[R]educing sidewalk and street congestion in a city with eight million inhabitants[] constitutes[s] [a] significant governmental interest[]…"). Additionally, the streets in which Case and Klein were arrested are surrounded with sidewalks. This means that the locations of their arrests were literally surrounded by ample alternative means of expression. The issue here is that plaintiffs declined to use them. Where ample alternative expression allows removing protestors several blocks from their intended protest location, certainly an adjacent sidewalk is an open and ample alternative. Kushneir was simply required to turn around and walk in the opposition direction on the sidewalk he was blocking. Plaintiffs have no viable time, place, and manner theory, and their claim must be dismissed.

Plaintiffs' excessive detention claim must be dismissed. "[J]udicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement . . . ." Bryant v. City of New York, 404 F.3d 128, 137 (2d Cir. 2005) (quoting Cty. of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991)). This was recently re-affirmed by the Second Circuit in the context of an arrest at Zuccotti Park in Caravalho v. City of New York, 732 Fed Appx. 18 at 23-24, (2d Cir. Apr. 25, 2018) ("We conclude that no reasonable jury could find that the detention of plaintiffs for 24 to 30 hours, in the circumstances here, was excessive. Their detention of less than 48 hours was presumptively reasonable."). The record shows that plaintiffs Case and Klein were both detained for approximately thirteen hours; plaintiff Kushneir was detained for approximately twelve hours. As plaintiffs were all released well within the forty-eight hour window, their detentions were presumptively reasonable. An arrestee can rebut the presumption of constitutionality by showing that the probable cause determination was "delayed

unreasonably, ″ such as ″for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake.″ McLaughlin, 500 U.S. at 56. Here, the record is entirely devoid of any evidence showing that defendants had control over their arrest processing time, that they created any delay to prevent them from later demonstrating at the Brooklyn Bridge as plaintiffs claim, or that their release was unreasonably delayed because of ill will toward any plaintiff because he or she was an OWS protester. In fact, plaintiffs cannot prove that their detention time was due to anything other than the ″practical realities″ of transporting wagon loads of arrestees and processing their arrests. See McLaughlin, 500 U.S. at 56-57. Accordingly, plaintiffs fail to overcome the presumption that their detention was not excessive, and this claim must be dismissed.

A plaintiff may sue for denial of the right to a fair trial where an officer creates false information likely to influence a jury's decision and forwards that information to prosecutors. Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997). Claims based on fabrication of evidence are restricted to those cases "in which an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." Garnett v. Undercover Officer C0039, 838, F.3d 265, 279 (2d Cir. 2016). Any alleged fabrication must be material—that is, of such a character that it would likely influence a jury's decision if a jury were to consider it. Id.; Marom v. City of New York, 2016 U.S. Dist. LEXIS 140720 at *7-8 (S.D.N.Y. 2016). Plaintiffs' denial of right to a fair trial claim fails as there is no evidence to suggest that defendant officers Almonte, Tverdokhleb or Maldonado fabricated evidence, which was material or likely to influence a jury's decision, or that plaintiffs suffered a loss of liberty. See Jovanovic v. City of New York, 486 F. App'x 149, 152 (2d Cir. 2012). Plaintiffs' conclusory and generalized allegations are not supported by the record, and this claim must be dismissed.

Finally, plaintiffs' claim under Monell must be dismissed. Where there is no underlying constitutional violation, there can be no liability pursuant to Monell. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). As noted above, plaintiffs' inability to show that their arrests were not justified by their behavior is fatal to their Monell claim. Furthermore, plaintiffs cannot show that there was a failure to sufficiently train officers as to First Amendment activity or disorderly conduct statues. Plaintiffs also cannot show a pattern of violations of citizens' constitutional rights by untrained officers during OWS. In short, plaintiffs cannot meet the high standard required to allege that the City was on notice that its training program was so deficient that by failing to alter it, the City was essentially complicit in the violation of plaintiffs' constitutional rights. Accordingly, plaintiffs' claim for municipal liability fails as they cannot show that defendants acted with deliberate indifference to the rights of persons participating in OWS demonstrations. As a result, plaintiffs' Monell claim must be dismissed.

For these reasons and others that will be set forth, Defendants request a pre-motion conference or alternatively a briefing schedule for their anticipated motion for summary judgment on all claims. Should leave be granted, the parties have agreed to the following briefing schedule:

- 5 -

| | |
|---|---|
| Defendants' Motion: | January 4, 2019 |
| Plaintiffs' Opposition: | February 11, 2019 |
| Defendants' Reply | March 18, 2019 |

Thank you for your consideration herein.

                                                Respectfully submitted,

                                                /s/
                                          Amy Robinson
                                          Special Federal Litigation Division

cc:     Plaintiffs' counsel *VIA ECF*