UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

BENJAMIN CASE, JENNIFER KLEIN, and MARK KUSHNEIR,

                                       Plaintiffs,

               -against-

THE CITY OF NEW YORK et al.,

                                       Defendants.

------------------------------------------------------------------------x

**DECLARATION OF GIDEON ORION OLIVER**

14-CV-9148 (AT) (BM)

## DECLARATION OF GIDEON ORION OLIVER

Gideon Orion Oliver, an attorney duly admitted to practice before this Court, hereby declares pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the attorney for Plaintiffs BENJAMIN CASE, JENNIFER KLEIN, and MARK KUSHNEIR.

2. I make this Declaration in Opposition to Defendants' Motion for Summary Judgment. The styles of referring to documents annexed hereto are adopted throughout Plaintiffs' papers opposing Defendants' summary judgment motion.

## SCOPE OF REMAINING CLAIMS

3. Only Plaintiff Mark Kushneir has false arrest claims that remain. All Plaintiffs continue to pursue First Amendment, Time/Place/Manner-based claims. Plaintiffs are no longer pursuing First Amendment claims based on a retaliation theory. All Plaintiffs continue to pursue fair trial rights violation-based claims. Of the *Monell* claims that this Court ruled were in play in connection with Defendants' motion to dismiss, Plaintiffs continue to pursue only their challenges to Defendants' "DAT/No Prints" policy as applied to Occupy Wall Street on First and Fourteenth Amendment (Equal Protection)-based grounds (policy

No. 6 listed in *Case v. City of New York,* 233 F.Supp.3d 372, 407 (SDNY 2017) and their failure-to-train theories based on policies Nos. 2-5 (but not 7-8) listed thereat.

## PLAINTIFFS' DEPOSITION TRANSCRIPTS[1]

4. Attached as Exhibit 1 is a true copy of the transcript of the deposition of Plaintiff Benjamin Case (the "Case Dep.")

5. Attached as Exhibit 2 is a true copy of the transcript of the deposition of Plaintiff Jennifer Klein (the "Klein Dep.")

6. Attached as Exhibit 3 is a true copy of the transcript of the deposition of Plaintiff Mark Kushneir (the "Kushneir Dep.")

## DEFENDANTS' AND THIRD-PARTY DEPOSITION TRANSCRIPTS

7. Attached as Exhibit 4 is a true copy of the transcript of the deposition of Defendant NYPD Officer Benjamin Almonte (the "Almonte Dep.")

8. Attached as Exhibit 5 is a true copy of the transcript of the deposition of Defendant NYPD Officer Dmitri Tverdokhleb (the "Tverdokhleb Dep.")

9. Attached as Exhibit 6 is a true copy of the transcript of Defendant NYPD Lieutenant Lawrence Papola's deposition (the "Papola Dep.")

10. Attached as Exhibit 7 is a true copy of the transcript of the deposition of Defendant NYPD Officer Michael Maldonado (the "Maldonado Dep.")

11. Attached as Exhibit 8 is a true copy of the transcript of the deposition of Defendant former NYPD Chief of Department Joseph Esposito (the "Esposito Dep.")

---

[1] Throughout, the parties have redacted personal information from exhibits as allowed by this Court's Individual Rules of Practice and the Southern District's ECF Privacy Policy. Additionally, Plaintiffs have redacted limited portions of few Defendants' depositions, where Defendants have taken the position that they should remain Confidential under the 1983 Plan Protective Order.

12. Attached as Exhibit 9 is a true copy of the transcript of the deposition of third-party witness NYPD Commanding Officer Anthony Raganella (the "Raganella Dep.")

13. Attached as Exhibit 10 is a true copy of the transcript of the deposition of third-party witness NYPD Officer Shurland Marshall (the "Marshall Dep.")

14. Attached as Exhibit 11 is a true copy of the transcript of the deposition of third-party witness NYPD Lieutenant Chris Czark (the "Czark Dep.")

15. Attached as Exhibit 12 is a true copy of the transcript of the deposition of NYPD Sergeant Heather Perkins in *Packard* vs. *The City of New York 1:15-cv-07130-AT-SDA* (the "Perkins Dep.")

## ARREST PROCESSING DOCUMENTS

16. Attached as Exhibit 13 is a true copy of the Scratch OLBS Report regarding Plaintiff Case's arrest (the "Case Scratch OLBS").

17. Attached as Exhibit 14 is a true copy of the OLBS Report regarding Plaintiff Case's arrest (the "Case OLBS").

18. Attached as Exhibit 15 is a true copy of the DAT regarding Plaintiff Case's arrest (the "Case DAT").

19. Attached as Exhibit 16 is a true copy of the OLPA Report regarding Plaintiff Case's arrest (the "Case OLPA").

20. Attached as Exhibit 17 is a true copy of the DA Datasheet regarding Plaintiff Case's arrest (the "Case Datasheet").

21. Attached as Exhibit 18 is a true copy of the Criminal Court Complaint regarding Plaintiff Case's arrest (the "Case Complaint").

22. Attached as Exhibit 19 is a true copy of the Court Action sheet regarding Plaintiff Case (the "Case CAS").

23. Attached as Exhibit 20 is a true copy of the Scratch OLBS Report regarding Plaintiff Klein's arrest (the "Klein Scratch OLBS").

24. Attached as Exhibit 21 is a true copy of the OLBS Report regarding Plaintiff Klein's arrest (the "Klein OLBS").

25. Attached as Exhibit 22 is a true copy of the DAT regarding Plaintiff Klein's arrest (the "Klein DAT").

26. Attached as Exhibit 23 is a true copy of the DA Datasheet regarding Plaintiff Klein's arrest (the "Klein Datasheet").

27. Attached as Exhibit 24 is a true copy of the OLPA Report regarding Plaintiff Klein's arrest (the "Klein OLPA").

28. Attached as Exhibit 25 is a true copy of the Criminal Court Complaint regarding Plaintiff Klein's arrest (the "Klein Complaint").

29. Attached as Exhibit 26 is a true copy of the Court Action sheet regarding Plaintiff Klein (the "Klein CAS").

30. Attached as Exhibit 27 is a true copy of the Scratch OLBS Report regarding Plaintiff Kushneir's arrest (the "Kushneir Scratch OLBS").

31. Attached as Exhibit 28 is a true copy of the OLBS Report regarding Plaintiff Kushneir's arrest (the "Kushneir OLBS").

32. Attached as Exhibit 29 is a true copy of the DAT regarding Plaintiff Kushneir's arrest (the "Kushneir DAT").

33. Attached as Exhibit 30 is a true copy of the DA Datasheet regarding Plaintiff Kushneir's arrest (the "Kushneir Datasheet").

34. Attached as Exhibit 31 is a true copy of the OLPA Report regarding Plaintiff Kushneir's arrest (the "Kushneir OLPA").

35. Attached as Exhibit 32 is a true copy of the Criminal Court Complaint regarding Plaintiff Kushneir's arrest (the "Kushneir Complaint").

36. Attached as Exhibit 33 is a true copy of the Certificate of Disposition regarding Plaintiff Kushneir (the "Kushneir COD").

37. Exhibits 13-19 are collectively referred to as the "Case Arrest Processing Documents".

38. Exhibits 20-26 are collectively referred to as the "Klein Arrest Processing Documents".

39. Exhibits 27-33 are collectively referred to as the "Kushneir Arrest Processing Documents".

40. As part of NYPD arrest processing, NYPD OLBS Reports are routinely forwarded to prosecutors prior to the first time an NYPD officer meets with a prosecutor regarding a potential prosecution.

## RAGANELLA EXHIBITS

41. Attached as Exhibit 34 is a true copy of the September 27, 2017 Notice of Deposition Pursuant to Rule 30(B)(6) in this case, referred to as "Raganella AR2" in the Raganella deposition ("AR2").

42. Attached as Exhibit 35 is a true copy of the October 21, 2012 NYPD Course on Disorder Control Training lesson plan titled "Legalities at protest/demonstrations", referred to as "Raganella AR10" in the Raganella deposition and Exhibit HH in the Supplemental Declaration of Amy Robinson ("AR10").

43. Attached as Exhibit 36 is a true copy of the June 5, 2014 NYPD Instructor Guide on Legalities at Protests/Demonstrations, referred to as "Raganella AR11" in the Raganella deposition ("AR11").

44. Attached as Exhibit 37 is a true copy of the NYPD Disorder Control Guidelines and referred to as "Raganella AR12" in the Raganella deposition ("AR12").

45. Attached as Exhibit 38 is a true copy of the May 5, 2014 NYPD Course on Disorder Control Training titled "Mass Arrest Procedures & Tactics", referred to as "Raganella AR13" in the Raganella deposition ("AR13").

46. Attached as Exhibit 39 is a true copy of a NYPD Rapid Mobilization Plan, referred to as "Raganella AR14" in the Raganella deposition ("AR14").

47. Attached as Exhibit 40 is a true copy of the December 7, 2012 NYPD Lesson plan on Disorder Control Training titled "Disorder Control Formation Verbal Commands", referred to as "Raganella AR15" in the Raganella deposition ("AR15").

48. Attached as Exhibit 41 is a true copy of the November 10, 2012 NYPD DCU Level I & II Mobilizations for Task Force Training-2010, referred to as "Raganella AR17" in the Raganella deposition ("AR17").

49. Attached as Exhibit 42 is a true copy of the October 19, 2012 NYPD Course on Disorder Control titled 'Containing the Event—Barrier Plan' referred to as "Raganella AR18" in the Raganella deposition ("AR18").

50. Attached as Exhibit 43 is a true copy of the May 14, 2011 NYPD Lesson Plan on Disorder Control Guidelines/Detail Rosters for Probationary Lieutenants, referred to as "Raganella AR19" in the Raganella deposition, and Exhibit II in the Supplemental Declaration of Amy Robinson ("AR19").

51. Attached as Exhibit 44 is a true copy of the November 14, 2011 NYPD Lesson Plan on Disorder Control Guidelines/Detail Rosters for Probationary Seargeants, referred to as "Raganella AR20" in the Raganella deposition, and Exhibit JJ in the Supplemental Declaration of Amy Robinson ("AR20").

52. Attached as Exhibit 45 is a true copy of the January 2012 Police Student Guide on Authority to Arrest, referred to as "Raganella AR23" in the Raganella deposition and Exhibit KK in the Supplemental Declaration of Amy Robinson ("AR23").

53. Attached as Exhibit 46 is a true copy of the November 10, 2012 NYPD Course on Disorder Control titled 'Command and Control for Civil Disorder', referred to as "Raganella AR25" in the Raganella deposition ("AR25").

54. Attached as Exhibit 47 is a true copy of NYPD Disorderly Conduct Warnings, referred to as "Raganella AR27" in the Raganella deposition ("AR27").

55. Attached as Exhibit 48 is a True Copy of the March 10, 2004 NYPD Legal Guidelines for the Republican National Convention, referred to as "Raganella AR39" in the Raganella deposition ("AR39").

## MARSHALL EXHIBITS

56. Attached as Exhibit 49 is a true copy of the 2006 NYPD Powerpoint Presentation on "Maintaining Public Order", referred to as "Marshall 8" in the Marshall deposition ("Marshall 8").

57. Attached as Exhibit 50 is a true copy of the December 2007 NYPD Police Academy Training Memo #41-07 on enforcing Disorderly Conduct laws, referred to as "Marshall 10" in the Marshall deposition and Exhibit GG in the Supplemental Declaration of Amy Robinson (the "Disorderly Conduct Training Memo").

58. Attached as Exhibit 51 is a true copy of the 2011 NYPD Police Student's Guide on Maintaining Public Order, referred to as "Marshall 25" in the Marshall deposition, and Exhibit BB in the Supplemental Declaration of Amy Robinson ("Marshall 25").

7

59. Attached as Exhibit 52 is a true copy of the August 2011 Police Academy Recruit School lesson on Custodial Offenses, referred to as "Marshall 33" in the Marshall deposition and Exhibit DD in the Supplemental Declaration of Amy Robinson ("Marshall 33").

60. Attached as Exhibit 53 is a true copy of the August 2011 Police Academy Recruit School lesson on Maintaining Public Order, referred to as "Marshall 34" in the Marshall deposition and Exhibit CC in the Supplemental Declaration of Amy Robinson ("Marshall 34").

61. Attached as Exhibit 54 is a true copy of the January 2007 Police Academy Lesson Plan on Maintaining Public Order, referred to as "Marshall 51" in the Marshall deposition and Exhibit CC1 in the Supplemental Declaration of Amy Robinson (the "Marshall 51").

62. Attached as Exhibit 55 is a true copy of the Legal Bureau Bulletin regarding disorderly conduct from April 15, 1971 which was still in effect on the date of the incident, referred to as "Marshall 95" in the Marshall deposition and Exhibit FF in the Supplemental Declaration of Amy Robinson (the "Legal Bureau Bulletin").

63. Attached as Exhibit 56 is a true copy of the July 2011 Police Academy Recruit School lesson on Authority to Arrest, referred to as "Marshall 99" in the Marshall deposition (the "Marshall 99").

## CZARK EXHIBITS

64. Attached as Exhibit 57 is a true copy of NYPD Patrol Guide Provision PG 208-27, Desk Appearance Ticket—General Procedure ("PG 208-27").

65. Attached as Exhibit 58 is a true copy of NYPD Patrol Guide Provision PG 208-28, Identification Standards for Desk Appearance Tickets ("PG 208-28").

66. Attached as Exhibit 59 is a true copy of NYPD Patrol Guide Provision PG 209-01, Conditions of Service ("PG 209-01").

67. Attached as Exhibit 60 is a true copy of NYPD Patrol Guide Provision PG 209-09, Personal Service of Summonses Returnable to Traffic Violations Bureau or Criminal Court ("PG 209-09").

## PACKARD EXHIBIT

68. Attached as Exhibit 61 is a true copy of the Plaintiffs' Local Civil Rule 56.1 Statement in *Packard* (the "Packard 56.1").

## ADDITIONAL STATEMENTS

69. In Plaintiffs' 56.1, Plaintiffs state that, "Despite requests during discovery for the intelligence NYPD relied on in formulating the DAT/No Prints policy, Defendants never turned over any records regarding any of the grounds Defendant Esposito cited as leading to or justifying the NYPD's decision to adopt the DAT-NO Prints policy," citing Esposito 29:2-31:3 and the March 23, 2018 Joint Letter (Dkt. 106).

70. Attached as Exhibit 62 is a true copy of the transcript of a March 5, 2015 Decision of Hon. Robert Mandelbaum rendered in the Criminal Court of the City of New York, in which the Court dismissed Disorderly Conduct charges against climate change protesters who had blocked vehicular traffic and disobeyed repeated dispersal orders on First Amendment – time/place/manner grounds (the "Mandelbaum Decision").

71. Attached as Exhibit 63 is a true copy of Defendants' October 10, 2017 letter confirming that Defendant Esposito testified on behalf of Defendant City about topics 1(l) through (m) in the 30(b)(6) Deposition Notice referred to elsewhere as Exhibit AR2, to wit: (l) discretion to release detainees with a summons or Desk Appearance Ticket after detention in lieu of arrest; and (m) procedures to be followed in determining whether to release a detainee with a summons or Desk Appearance Ticket.

9

72. Attached as Exhibit 64 is a true copy of the parties' March 23, 2018 Joint letter to the Court (Dkt. 106) that includes information at pp. 2-5 regarding the record evidence regarding the intelligence NYPD relied on in formulating the DAT/No Prints policy, and Plaintiffs' efforts to obtain additional information

73. Attached as Exhibit 65 is a placeholder for the confidential exhibit referred to as "Raganella AR5" in the Raganella deposition ("AR5").

## **OBJECTIONS TO DEFENDANTS' CHARACTERIZATIONS OF THEIR EXHIBITS**

74. In the January 11, 2019 Declaration of Amy Robinson (Dkt. 123, the "Robinson Decl."), Defendants characterize the testimony contained in Plaintiffs' deposition transcripts referred to, without referring to any particular testimony, *see* Robinson Decl. ¶¶ 4-6; video evidence referred to, *see* Robinson Decl. ¶¶ 12-13; and other evidence, *see* Robinson Decl. ¶¶ 14-15, 18, in the light most favorable to Defendants and/or in ways that contradict record evidence. Plaintiffs object to Defendants' self-serving characterizations. Additionally, with respect to the video evidence, unless video evidence "blatantly contradict[s]" facts set forth by Plaintiffs, or inferences that could be drawn in Plaintiffs' favor related to any facts in the case, *see Scott v. Harris*, 550 U.S. 372, 379-81 (2007), the Court must view the video evidence in the light most favorable to, and drawing all reasonable inferences in favor of Plaintiffs.

75. In the Supplemental Declaration of Amy Robinson in Support of Defendants' Motion for Summary Judgment (Dkt. 130, the "Supp. Robinson Decl."), Defendants attached as exhibits and characterize the contents of hundreds of pages of exhibits they claim related to certain topics of NYPD training, without referring to any record evidence showing or explaining how any exhibit was or was not used in training. Although extensive 30(b)(6) testimony was taken on those topics, and with respect to these documents, Defendants cite no records evidence to show how many of them were or were not used in

10

relevant training. Plaintiffs object to Defendants' characterizations through defense counsels' statements about the nature and role of the documents included along with the Supp. Robinson Decl.

76. Defendants claim that Exh. AA shows the Lesson Plan in which officers are trained on the Constitution, including the First Amendment. The 2007-2010 Lessons Plans (AA1-AA4) are prior revisions that were not in effect during the relevant time and there is no testimony that connects them to any relevant training. Marshall testified that the 2011 Lesson Plan did not reflect the department's training or practices on the Marshall topics. Marshall Dep. 69: 2-8. The only other record evidence about Exhibit AA is Marshall's testimony that this Lesson Plan was meant to promote discussion and not necessarily teach a legal principle. Marshall Dep. 70:2- 71:5. Although Defendants cite no pages in their characterization of this exhibit, the only references counsel could find to the Constitution in the 2011 Lesson Plan (AA) were Bates numbers 4622, 4624, 4627-4629, and 4634.  These references only explain that police officers must defend the Constitution (4622), state a goal that after the lesson a recruit will be able to "explain the United States Constitution and the Bill of Rights based on classroom discussion" (4622, 4634), state that the U.S. Constitution is a source of American law (4624), explain the three Articles of the Constitution (4627), state that the Bill of Rights is the first ten amendments to the Constitution (4627), and list the First, Second, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments with a one-phrase description under each (4627-4629). The text on the First Amendment training reads in entirety: "1. Freedom of **R** religion **A** ssembly **S** peech **P** ress" (4627, emphasis in original). The Lesson Plan then includes hypothetical examples to discuss in class (4627).

77. Defendants claim that Exh. BB shows, *inter alia*, the training that officers received on First Amendment rights and the disorderly conduct statute, PL §240.20(5), blocking

pedestrian of vehicular traffic, PL §240.20(6), refusal to comply with a lawful order to disperse. Although Defendants cite no pages within Exh. BB, counsel could identify only D3299-3301 and 3314-3317 reflecting those topics. Exhibits BB1-BB6 are clearly prior revisions that were not in effect during the relevant time and there is no testimony that connects them to any relevant training.

78. Defendants claim that Exh. CC shows *inter alia*, the training that officers received on First Amendment rights and the disorderly conduct statute PL §240.20(5), blocking pedestrian or vehicular traffic and PL §240.20(6), refusal to comply with a lawful order to disperse. Aside from defining "public place" and "transportation facility, " Exhs. CC and CC1 merely quote the text of the Disorderly Conduct statute. Exhibits CC2- -CC4 are prior revisions that were not in effect during the relevant time and there is no testimony that connects them to any relevant training.

79. Defendants claim that Exh. DD shows *inter alia*, the training that officers received on PL §195.05, Obstructing Governmental Administration (OGA). Exh. DD merely recites the OGA statute and provides examples- it does not cover probable cause of any First Amendment consideration (3452). Besides DD, there is no other training or written materials that reflect the department's training or practices regarding probable cause to arrest for OGA. Marshall Dep. 73:2-15. Exhibits DD1-DD4 are prior revisions that were not in effect during the relevant time and there is no testimony that connects them to any relevant training.

80. Defendants claim that Exh. EE shows *inter alia,* the training which officers received pertaining to the disorderly conduct orders and warnings given at demonstrations. Counsel could identify only two pages (D642 and 645) roughly touching on those topics.

81. Defendants claim that Exh. FF shows, *inter alia*, NYPD guidance and instruction as to the application of PL §240.20(6), failure to comply with a lawful order to disperse. Exh. FF is a 1971 Legal Bureau Bulletin. Although Marshall mentioned that the 1971 Bulletin was used in training regarding PL 240.20, aside from testimony that it was distributed, there was no further testimony about how that Bulletin was used. The only place it mentions giving a person the opportunity to leave the area when they have been given a warning to leave is in the summary of the facts in the case – not in any legal analysis or guidance. Although the New York Court of Appeals decided *People v. Jones* in 2007, and despite that the New York Court of Appeals decided a number of Disorderly Conduct cases on the *mens rea* required to support a Disorderly Conduct arrest or conviction after 1971, the NYPD Legal Bureau did not issue any further bulletins regarding authority to arrest for Disorderly Conduct until 2017. P's 56.1 ¶¶ 296-300.

82. Defendants claim that Exh. GG shows, *inter alia,* the training officers received as to the application of PL §240.20(5), blocking vehicular and pedestrian traffic. Marshall testified that she was unsure whether Exh. GG was used for recruit training in 2011. Marshall Dep. 60:15- 23. Further, Training Memos like Exh. GG are sent to instructors, who might choose to include the content in their lessons. Training Memos are not formally incorporated into training. Marshall Dep. 61:2- 63:10.

83. Defendants claim that Exh. HH shows, *inter alia*, the training officers received pertaining to how the First Amendment to the Constitution affected their job performance at protests and demonstration, as well as the training officers received on the rights of free speech and assembly as they pertain to NYPD policies. Exh. HH was removed from NYPD training in 2004. Perkins *Packard* Dep. 37:4-24.

13

84. Defendants claim that Exh. II shows, *inter alia*, training that probationary lieutenants received pertaining to protests/demonstrations. Exh. II is training for newly promoted lieutenants, and is not part of recruit or command-level training. Exh. II was not prepared by, approved by, or used by the DCU in any of its training.  Raganella Dep. 127:2-130:12.

85. Defendants claim that Exh. JJ shows, *inter alia*, training that probationary sergeants received pertaining to protests/demonstrations.  Exh. JJ is training for newly promoted sergeants, and is not part of recruit or command-level training. Exh. JJ was not prepared by, approved by, or used by the DCU in any of its training.  Raganella Dep. 127:2-130:12.

86. Defendants claim that Exh. KK shows, *inter alia*, the training officers receive pertaining to probably cause for arrest. No part of Exh. KK covers probable cause or authority to arrest for Disorderly Conduct in the context of First Amendment assemblies.

DATED:	Brooklyn, New York
	May 8, 2019

/S/
_____
Gideon Orion Oliver
Attorney for Plaintiffs
277 Broadway, Suite 1501
New York, NY  10007
646-263-3495

14