*ORAL ARGUMENT REQUESTED*
*PER INDIVIDUAL PRACTICE 3(G)*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Case, et al.

*Plaintiffs,*

v.

The City of New York, et al.,

*Defendants*

**14-cv-09148 (JLR)(BCM)**

---

### PLAINTIFF'S MEMORANDUM OF LAW
### IN SUPPORT OF HIS MOTIONS *IN LIMINE*

---

**COHEN&GREEN P.L.L.C.**
J. Remy Green
1639 Centre St., Suite 216
Ridgewood, New York 11385
t : (929) 888-9480

**GIDEON ORION OLIVER**
277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682

April 27, 2023

**TABLE OF CONTENTS**

TABLE OF CONTENTS .............................................................................................................ii

TABLE OF AUTHORITIES .....................................................................................................iv

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ..............................................................................................................................1

    I.      Defendants should not be permitted to mention dismissed claims or Plaintiffs..............1

    II.     Defendants should be precluded from introducing awards and commendations they and non-party witnesses have received as law enforcement..........................................................2

    III.   Defendants should be precluded from misleading the jury and pretending individual Defendants will not be indemnified for any damages award; and similarly should not be permitted to appeal to jurors as taxpayers. ......................................................................................3

    IV.   The Court should not give a nominal damages instruction. ...............................................5

    V.    Defendants should not be allowed to introduce evidence contrary to the City's 30(b)(6) testimony. .......................................................................................................................................7

    VI.   The Court should give missing witness charges related to Plaintiff's false arrest claim, and Defendants Esposito and Maldonado should not be permitted to testify to their speculation about those missing witnesses' activities or knowledge..............................................................................7

    VII.  Defendants should not be permitted to offer speculative testimony about Plaintiff's intent, or testimony about facts they were not aware of at the time of the arrest............................10

    VIII. For the same reasons, as well as for authentication reasons, Defendants' trial exhibit C should be precluded. .......................................................................................................................11

IX.     Plaintiff should be allowed to argue for specific dollar amounts as to both compensatory and punitive damages..................................................................................................................12

X.      If the Court is inclined to permit special interrogatories on qualified immunity, or for any other purpose, it should direct Defendants to submit them before trial begins..............................13

XI.     Plaintiff should be permitted to use a Rule 1006 summary to present certain evidence about the voluminous history of protest litigation against the City of New York for *Monell* purposes. 14

CONCLUSION................................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Akinnagbe v. City of New York*,
128 F. Supp. 3d 539 (E.D.N.Y. 2015)......................................................................... 12, 13

*Benzinger v Lukoil Pan Ams., LLC*,
2021 US Dist LEXIS 23597 (SDNY Feb. 8, 2021) ................................................................1

*Bixby v. KBR, Inc.*,
No. 09 Civ. 632(PK), 2012 U.S. Dist. LEXIS 143807 (D. Or. Oct. 4, 2012) ...................6

*Black Horse Lane Assn. v. Dow Chem. Corp.*,
228 F.3d 275 (3d. Cir. 2000) ..........................................................................................8

*Brown v. Turriglio*,
2018 U.S. Dist. LEXIS 162728 (NDNY 2018) ...............................................................14

*Case v City of NY*,
408 F Supp 3d 313 (SDNY 2019) ......................................................................... 1, 9, 15

*Chonich v. Wayne Cty. Cmty. Coll.*,
874 F.2d 359 (6th Cir. 1989)............................................................................................6

*Moore ex rel. Estate of Grady v. Tuelja*,
546 F.3d 423 (7th Cir. 2008)............................................................................................5

*Fogarty v. Gallegos*,
523 F.3d 1147 (10th Cir. 2008) .....................................................................................12

*Ford v Bell*,
2012 US Dist LEXIS 57324 (ND Ill Apr. 24, 2012) .........................................................1

*Gyasi v. City of N.Y.*,
No. 05 Civ. 9453 (S.D.N.Y.) ........................................................................................3, 4

*Hacker v. Cain*,
14-cv-00063-JWD-EWD, Doc. 235 (M.D. La., Jan. 17, 2017) .......................................8

*Henderson v. City & Cnty. of Denver*,
2014 WL 222761 (D. Colo. Jan. 21, 2014) ...................................................................12

*Kemezy v. Peters*,
79 F.3d 33 (7th Cir. 1996) (Posner, J.) ...........................................................................4

*Lightfoot v. Union Carbide Corp.*,
    110 F.3d 898 (2d Cir. 1997) ..................................................................................... 13

*Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*,
    196 F.3d 409 (2d Cir. 1999) ..................................................................................... 10

*Martinez v City of NY*,
    2022 US Dist LEXIS 210204 (EDNY Nov. 18, 2022) ...................................... 14

*Mathie v. Fries*,
    121 F.3d 808 (2d Cir. 1997) ....................................................................................... 4

*Papineau v. Parmley*,
    465 F.3d 46 (2d Cir. 2006) ............................................................................... 11, 13

*Rogers v Jarrett*,
    63 F.4th 971 (5th Cir 2023) (Willet, J., *dissenting*) ............................................ 2

*Sagendorf-Teal v. County of Rensselaer*,
    100 F.3d 270 (2d Cir. 1996) ..................................................................................... 10

*Shepard v Quillen*,
    2013 US Dist LEXIS 34331 (ED Cal Mar. 12, 2013) ......................................... 1

*Stanczyk v City of NY*,
    990 F Supp 2d 242 (EDNY 2013) ......................................................................... 14

*United States v. Blecker*,
    657 F.2d 629 (4th Cir.1981) ....................................................................................... 5

*United States v Costen*,
    1996 US Dist LEXIS 3595 (SDNY Mar. 25, 1996) ........................................... 15

*United States v. Hicks*,
    748 F.2d 854 (4th Cir. 1984) ..................................................................................... 6

*United States v. Morris*,
    573 F. App'x 712 (10th Cir. 2014) ........................................................................... 5

*United States v. Nazzaro*,
    889 F.2d 1158 (1st Cir. 1989) ................................................................................... 2

*United States v. Smyth*,
    556 F.2d 1179 (5th Cir.1977) ................................................................................... 5

*United States v. Washington*,
    106 F.3d 983 (D.C. Cir. 1997) ................................................................................. 2

*Vidrine v. St. Landry Parish Fire Protection*,
  Civil Action No. 6:12-cv-02111 (W.D. La. July 11, 2014) ............................................ 5

*Vil. of Freeport v Barrella*,
  814 F3d 594 (2d Cir 2016) ............................................................................................... 12

*Vilkhu v City of NY*,
  No. 06-CV-2095 (CPS)(JO), 2009 US Dist LEXIS 16616 (EDNY Mar. 2, 2009), *aff'd* 372 F.
  App'x. 222 (2d Cir. Apr. 21, 2010) ................................................................................... 7

## Other Authorities

Fed. R. Ev. 404(a) ....................................................................................................................... 2

Fed. R. Ev. 611 ........................................................................................................................... 5

Fed. R. Ev. 701 ......................................................................................................................... 12

Fed. R. Ev. 1006 ................................................................................................................. 15, 16

Fed. R. Evid. 403 ...................................................................................................................... 3, 4

Fed. R. Evid. 404(b) .................................................................................................................... 2

Fed. R. Evid. 611(c) .................................................................................................................... 5

Fed. R. Evid. 611(c)(2) ............................................................................................................. 5, 6

U.S. Const. amend I .................................................................................................................... 1

U.S. Const. amend IV ................................................................................................................ 12

## PRELIMINARY STATEMENT

As set out below, Plaintiff Mark Kushneir submits this memorandum in support of his motions *in limine*, seeking the relief set out in the accompanying notice of motion.  For the reasons below, he respectfully requests the Court grant this motion in full.  For a full statement of the relevant factual background, Plaintiff respectfully refers the Court to the parties' statements of material facts submitted in their summary judgment-related briefing, and to the Court's decision on the summary judgment motion.

## ARGUMENT[1]

### I.  Defendants should not be permitted to mention dismissed claims or Plaintiffs.[2]

This case has taken a long road to get here.  Along that road, a number of Mr. Kushneir's co-Plaintiffs had claims dismissed, including on qualified immunity grounds.  Courts routinely preclude reference to dismissed claims and parties, because of the risk that creates of jury confusion.  *See, e.g., Benzinger v Lukoil Pan Ams., LLC,* 2021 US Dist LEXIS 23597, at *16 (SDNY Feb. 8, 2021); *Shepard v Quillen,* 2013 US Dist LEXIS 34331, at *10 (ED Cal Mar. 12, 2013) ("Plaintiff may not testify regarding dismissed parties or dismissed claims").  The risk of jury confusion — and concomitant risk of the trial ending up in a mini-trial about claims no longer at stake — is particularly acute here where the controversial qualified immunity doctrine was part of why certain claims were dismissed.  *See, e.g., Case,* 408 F Supp 3d 313 at 326-27 (dismissing time, place, and manner based First Amendment claims on qualified immunity grounds).  If Defendants raise dismissed claims, to address that, Plaintiff will then have to explain what qualified immunity is, the harsh limitations it places on civil rights claims, and

---

[1] Plaintiffs have not moved for relief related to NYPD officers wearing uniforms, medals, weapons, or specialty gear while testifying because opposing counsel has represented that her "practice is typically to have all witnesses appear in civilian attire," and that if she "learn[s] in communicating with the trial witnesses that there would need to be some exception to that practice, [she] will let [us] know."  In order not to burden the Court with an unnecessary motion, we have not moved on this front, since the parties seem to be in agreement, but respectfully reserve the right to make a motion if Defendants let us know they intend to vary their typical practice.  *Cf. Ford v Bell,* 2012 US Dist LEXIS 57324, at *7 (ND Ill Apr. 24, 2012) (granting, without opposition beyond potential practical issues, "plaintiff's motion to have the officers not wear their uniforms in court," but noting that "defendants may raise the issue again before trial should circumstances change").

[2] The parties have agreed to amend the caption for much the same reason.

perhaps even how recent scholarship reveals that, hidden by a scrivener's error in transcribing § 1983, "Congress's literal language unequivocally negated the original interpretive premise for qualified immunity." *Rogers v Jarrett*, 63 F.4th 971 (5th Cir 2023) (Willet, J., *dissenting*).  None of that is necessary — it is best if the issues that have been dismissed remain dismissed, and do not form any part of the trial.

## II. <u>Defendants should be precluded from introducing awards and commendations they and non-party witnesses have received as law enforcement.</u>

In police misconduct trials, law enforcement officers, whether testifying as defendants or non-party witnesses, frequently attempt to discuss awards and/or commendations that they have received throughout their career relating to acts of purported bravery, valor, etc. Because such testimony is irrelevant to any issue at trial, represents impermissible propensity evidence in violation of Fed. R. Evid. 404(b), is inadmissible hearsay and otherwise unduly prejudicial, Plaintiff seeks an Order precluding the Defendants, and any law enforcement witnesses, from presenting such evidence.

Whether the individual Defendants or non-party law enforcement officers received commendations in the past has no relevance on whether Defendants violated Plaintiff's civil rights in this case. In fact, the sole purpose of presenting such testimony in police misconduct litigation is to convince the jury that the law enforcement officers are heroes who put their life on the line to protect the citizenry, and, as a result, are more trustworthy. This purpose, however, constitutes inadmissible hearsay. See Fed. R. Evid. 404(b). It is also inadmissible hearsay, whose non-existent probative value is necessarily substantially outweighed by its danger of unfair prejudice. *See United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (in criminal prosecution for conspiracy to commit mail fraud and perjury, among other things, it was appropriate to exclude evidence of commendations as impermissible opinion evidence and inadmissible hearsay); *See also United States v. Washington*, 106 F.3d 983, 999 (D.C. Cir. 1997) (commendations not admissible under Fed. R. Ev. 404(a)(1), 405(a), or 405(b)).

Put most simply, these factors do not make any witness more or less credible or truthful, and thus evidence of such unrelated service would be improper bolstering, as it would wrongly enhance the officers' credibility. Accordingly, any reference to the military history, community service, and civic service of any of the NYPD witnesses, including any of the defendants, should be excluded.

Additionally, this evidence should be excluded under traditional discovery rules as well. Plaintiff sought each Defendant's full "personnel file," which naturally would contain any commendations they received. *See* Green Ex. 1 at 30. Defendants objected among other things on relevance grounds, and based on those objections refused to produce anything beyond their initial disclosures. *Id.* Since Defendants' initial disclosures did not contain any commendations, awards, and the like (as further listed above), Defendants should not be able to surprise Plaintiff with that information at trial. And for that matter, they should not be allowed to change their position on relevance, or avoid deposition exploration of commendations and their bases (as well as exploring what else those commendations open the door to).

### III. <u>Defendants should be precluded from misleading the jury and pretending individual Defendants will not be indemnified for any damages award; and similarly should not be permitted to appeal to jurors as taxpayers.</u>

Defendants should be precluded under Fed. R. Evid. 403 from suggesting or implying in any way that individual Defendants will have to pay any judgment in this case, or that the City of New York is not the real party of interest. The Court should allow the parties to refer to the City of New York as a Defendant in the case, and to defense counsel as the City's attorneys. Defendants should not be permitted to introduce evidence of their financial circumstances because the City will indemnify them for any punitive damages awarded. It is the City's uniform and unwavering practice to indemnify damages awards for law enforcement personnel represented by the City Law Department. For example, in the context of the New York City Police Department, in sworn interrogatory responses in *Gyasi v. City of N.Y.*, No. 05 Civ. 9453 (SAS) (S.D.N.Y.), the City swore that "there are no cases" in which the City Law Department "has represented a NYPD police officer and punitive damages have

3

been assessed against the officer, and the City of New York has failed to indemnify the officer for punitive damages." Green Ex. 2 (*Gyasi* Interrogatory Response) at Interrogatory No. 5; see also id. at Interrogatory No. 7 ("there are no cases" where the City has failed to indemnify a police officer represented by the City Law Department for compensatory damages). In every case where compensatory or punitive damages have been awarded against a City police officer, the City, not the officer, paid. *See id.*

In light of the City's history of indemnifying law enforcement personnel when any damages, including punitive damages, are assessed, and the likelihood that that history will continue in this case, any evidence of the officers' financial circumstances is irrelevant, affirmatively misleading, and inadmissible. *See Mathie v. Fries*, 121 F.3d 808, 816 (2d Cir. 1997) ("It would be entirely inappropriate for a defendant to raise the issue of his limited financial resources if there existed an indemnity agreement placing the burden of paying the award on someone else's shoulders."). As Judge Scheindlin held in *Gyasi*:

> I am not going to mislead [the jury], thinking that [a punitive damages award] comes out of the poor officer's pocket and have the poor officer say, I have a wife and three kids and a mortgage, I can barely afford the payments, and I earn only 38,000, whatever. I am not going to have all that. If in fact the reality is that in the last 100 punitive damages awards the city has always indemnified, I am not going to have that testimony at all about his wife, kids and poor salary, because it's all irrelevant.

Green Ex. 3 (*Gyasi* Trans., June 29, 2006) at 6 (emphasis added).

Evidence of Defendants' financial circumstances has no relevance because Defendants will not pay a dime of any damages award, compensatory or punitive. But even if the evidence were somehow minimally relevant, its "relevance" would be substantially outweighed by the danger of prejudice and affirmatively misleading to the jury under Fed. R. Evid. 403. The individual Defendants "should not be allowed to plead poverty if his employer or an insurance company is going to pick up the tab." *Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996) (Posner, J.). Accordingly, the jury should not be

influenced by misplaced sympathy or the mistaken belief that individual Defendants will pay any damages out of their own pockets.[3]

The flipside is that remarks invoking the individual pecuniary interests of jurors as taxpayers are universally viewed as improper. *Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 429 (7th Cir. 2008) (declaring the following argument improper: "The city is not a random amorphous entity. It's you. We're talking about tax dollars here."); *United States v. Morris*, 573 F. App'x 712, 725 (10th Cir. 2014) (noting remarks invoking the pecuniary interests of jurors as taxpayers are generally improper); *United States v. Blecker*, 657 F.2d 629, 636 (4th Cir.1981) ("We recognize that appeals to the pecuniary interests of jurors [as taxpayers] are patently improper."); *see also Vidrine v. St. Landry Parish Fire Protection*, Civil Action No. 6:12-cv-02111 (W.D. La. July 11, 2014). The Fifth Circuit has characterized similar comments as an "unprofessional and highly improper appeal to the passion and prejudices of the juror[s]." *United States v. Smyth*, 556 F.2d 1179, 1185 (5th Cir.1977).

### IV. <u>The Court should not give a nominal damages instruction.</u>

Plaintiff asks the Court not to charge on nominal damages. In making that request, Plaintiff is electing not to pursue nominal damages. In other words, if the jury finds that Defendants violated Plaintiff's rights, but that Plaintiff has not proven by a preponderance of the evidence any particular damages, Plaintiff is forgoing his right to any nominal damages.

A nominal damages charge is available to plaintiffs, for their benefit. Defendants do not have the ***right*** to require a plaintiff to pursue nominal damages, or to a jury charge on nominal damages, over a plaintiff's objection. *See, e.g., Vilkhu v City of NY,* No. 06-CV-2095 (CPS)(JO), 2009 US Dist LEXIS 16616 (EDNY Mar. 2, 2009), *aff'd* 372 F. App'x. 222 (2d Cir. Apr. 21, 2010). Although nominal damages are *available* to a person who was actually injured, Plaintiff respectfully submits that the Court

---

[3] If there is any question as to whether the City's practice on indemnity has changed since *Gyasi* — our understanding is that it has not — the City should provide updated answers to the *Gyasi* interrogatories.

cannot, and should not, preclude Plaintiff from making the strategic choice not to pursue nominal damages. As the Court explained in *Vilkhu*:

> Courts have long recognized the importance of a nominal damages award as a means for a plaintiff to vindicate a violation of his or her rights even in the absence of compensable injury. In *Carey v. Piphus*, the Supreme Court introduced the availability of nominal damages in a § 1983 action because of the "importance to organized society" that constitutional rights be respected, even where a plaintiff failed to establish actual injury. 435 U.S. 247, 266-67, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978). That the availability of nominal damages, where appropriate, is intended to benefit the plaintiff is apparent from the entitlement language employed with respect to plaintiffs in the relevant case law. …

> In cases where the proof of plaintiff's injury is slim or contested, however – and especially in cases where proof of the alleged constitutional violation hinges on the jury's determinations of witness credibility -- *a nominal damages instruction affords the jury an opportunity to engage in improper compromise. In such cases, a plaintiff should be allowed to determine whether to seek both nominal and compensatory damages, or whether to remove the option of nominal damages from the jury's consideration and instead seek an outcome in his case based on his showing of proximately caused actual injury.* To afford a defendant an equal right to a nominal damages charge in such a case would preclude a plaintiff from making this strategic choice.

*Vilkhu*, 2009 US Dist LEXIS 16616, at *19-21 (emphasis added).  The Second Circuit affirmed this decision, and Plaintiff believes a nominal damages instruction here would be exactly the invitation to improper compromise the *Vilkhu* court was concerned about (and the Second Circuit implicitly found to be a proper concern).

It is Plaintiff's right to choose to seek nominal damages or not.  The doctrinal basis for a nominal damage instruction does not support a defendant using it as a sword to try to force improper compromise within the jury.  None of the doctrinal or policy reasons for allowing a *Plaintiff* to elect nominal damages — growing out of the "importance to organized society that constitutional rights be respected, even where a plaintiff failed to establish actual injury" (*Vilkhu*, 2009 US Dist LEXIS 16616, at *19-21 (quotation marks omitted) — support allowing a ***defendant*** to force a nominal damage charge over a plaintiff's objection.  Indeed, that would serve the exact opposite of the doctrinal goal of the nominal instruction in the first place.  Here, Plaintiff has chosen not to pursue nominal

damages.  It would be reversible error under *Vilkhu* for the Court to override that election by charging on nominal damages over Plaintiff's objection.

### V. <u>Defendants should not be allowed to introduce evidence contrary to the City's 30(b)(6) testimony.</u>

Plaintiff asks this Court to exclude any testimony or evidence contrary to Defendants' 30(b)(6) testimony without prior notification and argument. As courts have previously noted, "statements made by Defendants' corporate representatives during a 30(b)(6) deposition . . . are binding on the party" but are not "judicial admissions that decide an issue with finality or estops the party from, in the discretion of the Court, offering contradictory testimony if there is a reasonable explanation given." *Hacker v. Cain*, 14-cv-00063-JWD-EWD, Doc. 235 (M.D. La., Jan. 17, 2017) (order on motions *in limine*), *citing Johnson v. Big Lots Stores, Inc.*, 2008 WL 6928161 at * 3 (E.D. La. May 2, 2008).

Here, the City has made significant admissions in extensive 30(b)(6) depositions related to the NYPD's policies, practices, and training that are central to both Plaintiff's core and *Monell* claims, and those depositions form the structure on which Plaintiff has built his trial approach.

Defendants should be prohibited from offering any new testimony or evidence contrary to the 30(b)(6) testimony without prior notification and argument. To the extent Defendant failed to provide a knowledgeable, prepared deponent, that would be a failure to appear and subject to sanctions. *See e.g. Black Horse Lane Assn. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d. Cir. 2000).

Allowing Defendants to change their testimony or the evidence they intend to proffer shortly before trial would constitute trial by surprise — something long abandoned. The City bound itself to the policies its witnesses articulated, and allowing the City to change what it claims those policies and training are after the sheer volume of *Monell* discovery in this case would be profoundly prejudicial, not to mention just plain confusing for the jury.

### VI. <u>The Court should give missing witness charges related to Plaintiff's false arrest claim, and Defendants Esposito and Maldonado should not be</u>

**permitted to testify to their speculation about those missing witnesses'
activities or knowledge.**

As the Court articulated on summary judgment, a major issue on Plaintiff's false arrest claim is
whether "Kushneir was blocking pedestrian traffic at the time of arrest." *Case v City of NY*, 408 F
Supp 3d 313, 321 (SDNY 2019).  On this, a major issue is that Defendant Esposito "testif[ied] that
another officer gave a pre-scripted order to disperse prior to Esposito's own 'final' order, but that
Esposito could not recall who that officer was," that Esposito did not use any amplification for that
"final"[4] order, that there are no records at all of any prior order beyond Esposito's say so (despite
policies that would require such documentation at least in certain circumstances), no prior order was
recorded (despite policies that would require it to be captured on video), and that the City has been
completely unable to substantiate any of Esposito's claims beyond Esposito's testimony. *Id.* at 322.
Esposito also testified that giving proper orders to disperse was "[s]omeone else's job. I'm the chief
of department." *Id.*

On this, there are (at least) four witnesses one might expect the City to call to shore up Esposito's
bald claims, whom the City apparently has no intention to call:

1. The officer who supposedly gave dispersal order prior to Esposito's (according to Esposito),
   *see, e.g.,* Plaintiff's 56.1 (ECF No. 131) ¶¶ 182-187;
2. Det. Rivera (the TARU videographer who recorded Esposito's dispersal order – but not any
   other, prior,  claimed dispersal order - and Plaintiff's initial arrest);
3. The officer who actually physically arrested Mr. Kushneir after Defendant Esposito and
   before a supervisor assigned Defendant Maldonado to process Mr. Kushneir's arrest, *see, e.g.,
   id.* ¶¶ 174, 178-179, 233; and
4. The supervisor who assigned Defendant Maldonado to process Kushneir's arrest (*id.* ¶¶ 234-
   236).

If Defendants' trial strategy matches their summary judgment approach, it appears they will attempt
to have Defendants Esposito and/or Maldonado testify about what they speculate these four
witnesses did or knew, despite a lack of direct personal knowledge.

---

[4] Mere seconds (or less) expired, with no opportunity to disperse, between Esposito's unintelligible "order" and his
direction to arrest.

A missing witness charge "'permits the jury to draw an adverse inference against a party failing to call a witness when the witness's testimony would be material and the witness is peculiarly within the control of the party.'" *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 432 n.10 (2d Cir. 1999) (*quoting United States v. Caccia*, 122 F.3d 136, 138 (2d Cir. 1997)).  In deciding whether to give that charge, a court should look to 'all the facts and circumstances bearing upon the witness's relation to the parties, rather than merely on physical presence or accessibility'" in deciding whether the witness is in one party's control.  *Id.* (*quoting United States v. Torres*, 845 F.2d 1165, 1170 (2d Cir. 1988)).  Substantively, the charge is essentially that the jury *may* "draw an adverse inference that the testimony of the witness would have been unfavorable to that party" (*Sagendorf-Teal v. County of Rensselaer*, 100 F.3d 270, 275 (2d Cir. 1996)) — and it therefore permits the other party to argue to the jury why that "may" is a "should" in light of the totality of circumstances.[5]

Here,  Defendant Maldonado identified the 3rd and 4th missing NYPD member witnesses above.  So, for each missing witness, there is no dispute the missing witnesses are "peculiarly" within Defendants' control.  Nor is there a dispute their testimony is "material" — it is essentially Defendants' only argument for probable cause.  Defendants' decisions not to call these witnesses demonstrates they would not testify favorably for Defendants or consistently with Defendants Esposito and Maldonado.  Likewise, the fact that Defendants have been totally unable — despite the fact that every relevant record is in their control — to identify the person Defendant Esposito claims gave a dispersal order or orders prior to the "final" dispersal order he gave bears directly on the Defendant Esposito's credibility in saying those things happened.  It is a core function in protest policing to **record** when an order to disperse is given — without that information, the arrests and subsequent prosecutions are very likely to fail.  The entire NYPD system is set up to make sure that

---

[5] That is not to say a party may not make a quality of evidence or weight argument *without* a missing witness charge — rather, that it is appropriate, since that argument will inevitably be part of the way the jury evaluates Defendant Esposito's testimony, for the jury to be instructed on what the law permits them to do with the absence of the four witnesses listed above.

information is recorded.  And here, it simply was not.  This was not a surprise of a protest — it was a planned enforcement.  So, the fact that the City of New York (1) cannot produce the person who supposedly gave the only audible and intelligible order to disperse, (2) is not going to produce the TARU camera person who did not record it that supposed order, and the like, all fits the classic standard for a missing witness charge.

Likewise, for the same reasons, as well as those discussed in Point VII, Defendants Esposito and Maldonado should not be permitted to speculate about what these witnesses did or knew or would testify if they were ever called or identified.

### VII.   Defendants should not be permitted to offer speculative testimony about Plaintiff's intent, or testimony about facts they were not aware of at the time of the arrest.

As the Court well knows, probable cause is evaluated solely based on what the arresting officer — here, Defendant Esposito, as the person giving the order to arrest — knows at the time of arrest. Therefore, Defendants should be barred from introducing materials that attempt to muddy that water — for example, statements about events and information that Defendant Esposito did not see or know about, or what *other* protesters might have intended to do, or by speculating about Mr. Kushneir's intent as part of a group probable cause-type theory.  *Papineau v. Parmley*, 465 F.3d 46, 59 (2d Cir. 2006) (holding that officers could not have thought that indiscriminate arrests were lawful when "a few individuals within [a protesting] crowd had violated the law at an earlier time and then desisted"); *Henderson v. City & Cnty. of Denver*, 2014 WL 222761, at *4 (D. Colo. Jan. 21, 2014) ("[T]he Tenth Circuit has held that an individual must be judged for his own actions, and not the actions of those around him."); *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1158 (10th Cir. 2008) ("The Fourth Amendment plainly requires probable cause to arrest Fogarty as an individual, not as a member of a large basket containing a few bad eggs.").  Said another way, "[n]either energetic, even raucous, protesters who annoy or anger audiences, nor demonstrations that slow traffic or inconvenience pedestrians, justify police stopping or interrupting a public protest." *Akinnaghe v. City of New York*,

10

128 F. Supp. 3d 539, 551 (E.D.N.Y. 2015) (citations omitted). Furthermore, Rule 701 bars

speculative testimony. *Vil. of Freeport v Barrella*, 814 F3d 594, 599 (2d Cir 2016).  Defendant

Esposito's — or any other Defendant's — speculation about Mr. Kushner's intent would be classic

speculation, and therefore should be barred.

### VIII.   For the same reasons, as well as for authentication reasons, Defendants' trial exhibit C should be precluded.

Defendants' proposed trial exhibit C ("Def. Ex. C") is a video showing clips of some events

on the day of the protest that do not include Mr. Kushneir's arrest.  Neither Defendant Maldanado

nor Defendant Esposito seems to appear in Def. Ex. C, and it is not clear whether, where, or when

Mr. Kushnier might appear.

None of Defendants' deponents testified about the contents of Def. Ex. C.  It is not clear how

Defendants intend to have it authenticated, since the videographer ("McDonald," based on the file

name) does not appear on their witness list.  Nor is this an instance where that is of minor importance:

the video starts and stops at various times, and jumps around without any explanation.  *See, e.g.,* Def.

Ex. C. at 00:20-24 (the videographer saying "at this point, I'm shutting off the tape," and the time

jumping from 8:06:49 AM to 8:15:33 AM).  Those gaps in time omit context, and without an

explanation for why the videographer did not capture certain things, showing an incomplete picture

will only aggravate the core problem.

That core problem is that the video amounts to hearsay and speculation Defendants

presumably aim to use to argue probable cause.  Nothing in the video was what was known to

Defendants Esposito or Maldanado at the time of arrest.  They do not appear in the video, and did

not testify at any point that its contents reflected anything they knew.  Rather, this appears to be an

attempt to fill in the gaps in what is otherwise a lacking picture of probable cause those witnesses

would be able to paint.  Even then, nothing in the video shows anything that would justify arrests,

because "[n]either energetic, even raucous, protesters who annoy or anger audiences, nor

demonstrations that slow traffic or inconvenience pedestrians, justify police stopping or interrupting a public protest." *Akinnagbe*, 128 F. Supp. 3d at 551 (citations omitted). And even if it did, no officer can reasonably think arresting crowds indiscriminately is lawful when "a few individuals within [a protesting] crowd had violated the law at an earlier time and then desisted." *Papineau,* 465 F.3d at 59. Yet, that is all this video could possibly be used for. So for these reasons, and those in Point VII, Def. Ex. C should be not be admitted or used.

### IX. Plaintiff should be allowed to argue for specific dollar amounts as to both compensatory and punitive damages.

The Second Circuit has expressly "decline[d]" to "adopt a per se rule prohibiting counsel from suggesting a specific sum as to damages." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997). Rather, that decision is "best left to the discretion of the trial judge, who" — if they are concerned — "may either prohibit counsel from mentioning specific figures or impose reasonable limitations, including cautionary jury instructions." *Id.* Under *Lightfoot*, many courts have "decline[d] to preclude either party from recommending specific dollar amounts in their summations," favoring instead "remind the jury in its instructions that any damages figure recommended by counsel is argument and not evidence." *Martinez v City of NY*, 2022 US Dist LEXIS 210204, at *62 (EDNY Nov. 18, 2022).

Particularly because the jury will already be hearing numbers — including settlement numbers, which are inherently lower than a jury award should be — in Plaintiff's presentation of the *Monell* notice history, it is important for Plaintiff to be able to argue specifics. Otherwise, jurors would be unduly anchored to out of date and non-jury numbers because those are what Plaintiff must present to establish his *Monell* case. Instead, here, the Court can and should given instructions like those in *Martinez*, but allow both parties to contextualize the other numbers jurors will hear. Anything else risks undue anchoring from other substantive evidence.

Indeed, some judges in New York have faulted counsel who do not seek to argue damage numbers, commenting that such a "*laissez-faire* summation" leave the "jury … bereft of any guidance to assist it in determining appropriate damages." *Stanczyk v City of NY*, 990 F Supp 2d 242, 249-250 (EDNY 2013) (using the failure to "request[] the Court's permission to suggest some dollar amounts" to reduce the hourly rate granted on fees).

### X.   If the Court is inclined to permit special interrogatories on qualified immunity, or for any other purpose, it should direct Defendants to submit them before trial begins.

Defendants may request special interrogatories, post-verdict, to support a purported qualified immunity defense. Plaintiff does not believe such interrogatories would be proper. "Qualified immunity is, in general, a question of law to be decided by the court," which means that "a jury instruction on qualified immunity serves no legitimate purpose." *Brown v. Turriglio*, 2018 U.S. Dist. LEXIS 162728, *9-10 (NDNY 2018). That is, "[o]nce the jury has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court." *Id, quoting Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). It is not clear what function a qualified immunity special interrogatory would serve, in light of that, at least without seeing it first.

Therefore, if the Court might allow special interrogatories for any purpose — but particularly on qualified immunity issues — the Court should order Defendants to provide them well in advance of the beginning of trial. Special interrogatories elicit facts from the jury, and it is not fair to have Defendants build a defense by claiming facts are absent from the record, or have not been proven, without Plaintiff having an opportunity to know, upfront, what he needs to prove (or what Defendants claim did not happen). This cannot wait until the close of evidence, when it is too late for Plaintiff to supplement the record, voir dire on the special interrogatories, or propose jury instructions which address them.

XI. **Plaintiff should be permitted to use a Rule 1006 summary to present certain evidence about the voluminous history of protest litigation against the City of New York for *Monell* purposes.**

Fed. R. Ev. 1006 permits a party to "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court," provided they meet certain requirements Plaintiff is happy to meet. *See, e.g, United States v Costen*, 1996 US Dist LEXIS 3595, at *6 (SDNY Mar. 25, 1996) (granting *in limine* motion to use a FRE 1006 summary, and directing the proponent to make the underlying materials available "during the week prior to the commencement of trial"). On summary judgment, the Court "h[eld] that the number and persistence of legal challenges brought, sometimes resulting in plaintiffs' verdicts and other times in settlements, is sufficient to create a jury question on the issue of notice," such that we would be able to present those suits to a jury. *Case v City of NY*, 408 F Supp 3d 313, 328 (SDNY 2019). Thus, at trial, Plaintiff will need to present some evidence as to the underlying facts of those legal challenges, including what was alleged, what courts found, what verdicts or settlements were reached, and so on. To cover all of the information necessary for a jury to find notice, Plaintiff will need to present multiple documents from many dockets — among other things, complaints, to show what was alleged; summary judgment and motion to dismiss decisions, to show notice to the City that a policy could be unconstitutional; verdicts and settlements, to show the ultimate outcomes, as well as to argue the significance of particular settlement numbers. Essentially, presenting this information in raw form to the jury would require thousands of pages of docket items, and the needles of valuable information would be lost in the haystack of those dockets — for jurors, who are not lawyers, to try to find while deliberating. Such a presentation would also consume a massive amount of time. It is exactly for this purpose that Fed. R. Ev. 1006 exists.

Oliver Exhibit 4 is a proposed rough draft for the form of those summaries,[6] using the *Haus* (03-cv-4915 (SDNY) (RWS)(MHD)) case as an exemplar — with the idea being that that the same type of summary would be replicated to summarize the others.  Essentially, the idea is to include a basic summary of the allegations insofar as they parallel the three *Monell* theories remaining here, any significant findings or rulings that bear on those theories, as well as the ultimate result (which would bear on the weight a jury should assign the case for notice purpose).  Plaintiff is open to any modifications or additions Defendants suggest, or if the Court has concerns, is happy to make changes to address them (hence proposing an exemplar).

---

[6] The left hand column is the list of cases Plaintiff proposes to fill out the 1006 summary with.

## CONCLUSION

For all the reasons discussed above, Plaintiff Kushneir respectfully requests the Court grant this motion *in limine* in full.


Dated:    April 27, 2023
             Queens, New York


Respectfully Submitted,

**COHEN&GREEN P.L.L.C.**

/s/
_____

**BY:**      J. Remy Green

1639 Centre St., Suite 216
Ridgewood, New York 11385
t : (929) 888-9480
f:  (929) 888-9457
e:  remy@femmelaw.com

**GIDEON ORION OLIVER**
277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682

16