Docket No. 14 Civ. 9148 (JLR)(BCM)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BENJAMIN CASE,

Plaintiff,

-against-

THE CITY OF NEW YORK, CHIEF OF
DEPARTMENT JOSEPH ESPOSITO,
LIEUTENANT DAVID GROHT, SERGEANT
LAWRENCE PAPOLA, OFFICER BENJAMIN
ALMONTE, OFFICER DMITRY TVERDOKHLEB,
and OFFICER MICHAEL MALDONADO,

Defendants.[1]

**MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S
MOTIONS *IN LIMINE***

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the City of New York
*Attorney for Defendant*
100 Church Street
New York, N.Y.  10007
Of Counsel:  Hannah V. Faddis

Tel:  (212) 356-2486

---

[1] The parties have both moved *in limine* to amend the caption to reflect only the parties remaining for trial.

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................I

ARGUMENT .................................................................................................................1

DEFENDANTS AGREE THAT THE PARTIES SHOULD NOT MENTION DISMISSED
CLAIMS OR PARTIES .................................................................................................1

DEFENDANTS WILL NOT OFFER EVIDENCE OF AWARDS OR
COMMENDATIONS .....................................................................................................1

NO PARTY SHOULD BE PERMITTED TO MENTION INDEMNIFICATION.................1

THE COURT SHOULD CHARGE THE JURY ON NOMINAL DAMAGES.......................2

DEFENSE WITNESSES SHOULD NOT BE FORECLOSED FROM OFFERING
RELEVANT TESTIMONY............................................................................................4

PLAINTIFF IS NOT ENTITLED TO MISSING WITNESS CHARGES FOR
WITNESSES HE HAS CHOSEN NOT TO CALL .........................................................4

DEFENSE WITNESSES SHOULD NOT BE FORECLOSED FROM OFFERING
RELEVANT TESTIMONY............................................................................................7

DEFENDANTS' EXHIBIT "C" SHOULD BE ADMITTED.........................................8

PLAINTIFF SHOULD BE PRECLUDED FROM REQUESTING A SPECIFIC DOLLAR
AMOUNT FROM THE JURY ......................................................................................9

**POINT X** ....................................................................................................................**10**

**SPECIAL INTERROGATORIES MUST BE BASED ON THE EVIDENCE ADDUCED
AT TRIAL** ...............................................................................................................**10**

**POINT XIII** ............................................................................................................**11**

**PLAINTIFF'S PROPOSED RULE 1006 SUMMARY SHOULD BE PRECLUDED** ..........**11**

**CONCLUSION** .......................................................................................................**13**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Brooker v. State</u>,
   206 A.D.2d 712, 614 N.Y.S.2d 640 (N.Y. App. Div. 3d Dept. 1994).......................................3

<u>Carey v. Piphus</u>,
   435 U.S. 247 (1978)................................................................................................................2, 3

<u>DiSorbo v. Hoy</u>,
   343 F.3d 172 (2d Cir 2003)........................................................................................................10

<u>Farrar v. Hobby</u>,
   506 U.S. 103 (1992)....................................................................................................................3

<u>Gibeau v Nellis</u>,
   18 F.3d 107 (2d Cir. 1994)..........................................................................................................2

<u>Jones v. Treubig</u>,
   963 F.3d 214 (2d Cir. 2020).......................................................................................................11

<u>Martinelli v. Bridgeport Roman Catholic Diocesan Corp.</u>,
   196 F.3d 409 (2d Cir. 1999).........................................................................................................5

<u>Randolph v. Metro. Transp. Auth.</u>,
   No. 17 Civ. 1433 (DLC), 2019 U.S. Dist. LEXIS 62148 (SDNY Apr. 11,
   2019) .........................................................................................................................................2, 3

<u>Ranish v. Delta Air Lines</u>,
   No, 95-7392, 1995 U.S. App. LEXIS 39834 (2d Cir. Nov. 21, 1995) ......................................5

<u>United States v Blackwood</u>,
   366 F App'x 207 (2d Cir. 2010) ................................................................................................12

<u>United States v. Colon</u>,
   250 F.3d 130 (2d Cir. 2001)........................................................................................................7

<u>United States v. Mittelstaedt</u>,
   31 F.3d 1208 (2d Cir. 1994)........................................................................................................5

<u>Vilkhu v. City of N.Y., et al.</u>,
   372 Fed. Appx. 222 (2d Cir. 2010)..............................................................................................2

Watkins v. Ruscitto,
    No. 14 Civ. 7504 (AJP), 2016 U.S. Dist. LEXIS 89499 (S.D.N.Y. July 11,
    2016) ....................................................................................................................................7

Zellner v. Summerlin,
    494 F.3d 344 (2d Cir. 2007)...............................................................................................7

**Statutes**

42 U.S.C. § 1988 ...........................................................................................................................3

**Other Authorities**

Fed. R. Civ. P. ..............................................................................................................................12

Fed. R. Evid. 408 ....................................................................................................................10, 12

Fed. R. Evid. 1006 ...................................................................................................................11, 12

## ARGUMENT

### POINT I

### DEFENDANTS AGREE THAT THE PARTIES SHOULD NOT MENTION DISMISSED CLAIMS OR PARTIES

Defendants agree that the parties should be precluded from offering argument or testimony relating to dismissed claims or parties.  See Defendants' Motions *in Limine*, Point VIII.

### POINT II

### DEFENDANTS WILL NOT OFFER EVIDENCE OF AWARDS OR COMMENDATIONS

Defendants will not offer evidence of awards or commendations received by the individual defendants.  Defendants reserve the right to offer testimony from the individual defendants relating to their backgrounds and pedigrees.

### POINT III

### NO PARTY SHOULD BE PERMITTED TO MENTION INDEMNIFICATION

Defendants will not offer any evidence or argument relating to indemnification or the individual officers' financial resources.  Accordingly, all parties should be precluded from mentioning indemnification of the individual defendants.  See Defendants' Motions *in Limine*, Point IV.

**POINT IV**

**THE COURT SHOULD CHARGE THE JURY
ON NOMINAL DAMAGES**

The Court should charge the jury on nominal damages. It is well-settled that nominal damages must be awarded where a plaintiff prevails on a claim for violation of a substantive constitutional right, but has not proven any compensatory damages. See, Gibeau v Nellis, 18 F.3d 107, 110 (2d Cir. 1994) (citing Smith v. Coughlin, 748 F.2d 783, 789 (2d Cir. 1984)); see also, Carey v. Piphus, 435 U.S. 247, 267 (1978).  Plaintiff's reliance on the Second Circuit's decision in Vilkhu is overstated, where the District Court articulated multiple grounds for denying a post-trial motion based on the failure to delivery a nominal damages charge and the Circuit upheld that decision "for substantially the same reasons," without articulating any controlling decision or reasoning on this issue.  See, Vilkhu v. City of N.Y., et al., 372 Fed. Appx. 222, 223 (2d Cir. 2010).

While plaintiff contends that offering a nominal damages charge could invite jury compromise, he cites to no case where this has even arguably occurred.  Indeed, the omission of a nominal damages charge does not solely impact the plaintiff. As Judge Cote has noted—post-Vilkhu—omitting a nominal damages charge on request of the plaintiff could give "the jury a false signal regarding the impact of their verdict on a plaintiff's rights and force[] them wrongly to conclude that they [have] to make an award of compensatory damages even when the evidence [does] not warrant one." Randolph v. Metro. Transp. Auth., No. 17 Civ. 1433 (DLC), 2019 U.S. Dist. LEXIS 62148, at *28-29 (SDNY Apr. 11, 2019). That is, without a nominal damage charge, a jury may be more likely to compromise and make an award of compensatory damages where none had been sufficiently proven.

2

Moreover, the benefit of inviting a compromise compensatory award would seem to flow to counsel rather than the plaintiff.  This is because a nominal verdict might not entitle the plaintiff—or his counsel by proxy—to fees under 42 U.S.C. § 1988, even if he were the prevailing party.  Farrar v. Hobby, 506 U.S. 103, 115 (1992) ("When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all.") (citing Carey, 435 U.S. at 256-257, 264). Thus, one of the consequences of eliminating a nominal damages charge is that an award of attorney's fees may be more likely in a case with little to no actual value.  This posture would seem to create a perverse litigation incentive and run contrary to the Supreme Court's admonition that Section 1988 was "never intended to produce windfalls" for parties.  Farrar, 506 U.S. at 115 (citing Riverside v. Rivera,  477 U.S. 561 (1986)).

Additionally, failing to provide a nominal damages charge should result in the failure of plaintiff's claims.  The purpose of nominal damages is to "ensure that certain rights remain actionable regardless of their consequences in terms of compensable injury." Randolph v. Metro. Transp. Auth., No. 17 Civ. 1433 (DLC), 2019 U.S. Dist. LEXIS 62148, at *27 (S.D.N.Y. Apr. 11, 2019) (citing Amato v. City of Saratoga Springs, 170 F.3d 311, 318 (2d Cir. 1999); see also Carey, 435 U.S. at 266 (making procedural due process claim actionable by allowing award of nominal damages); Brooker v. State, 206 A.D.2d 712, 614 N.Y.S.2d 640 (N.Y. App. Div. 3d Dept. 1994) (allowing recovery of only nominal damages for battery that resulted in no actual injury).  Thus, the waiver of a nominal damage award would result in a lack of any finding of injury, an essential element of plaintiff's claims.

For all of the foregoing reasons, defendants respectfully submit that the jury should be charged on nominal damages.

3

## POINT V

### DEFENSE WITNESSES SHOULD NOT BE FORECLOSED FROM OFFERING RELEVANT TESTIMONY

Plaintiff's motion to preclude "new" or "contrary" evidence is so vague as to be almost unintelligible and should be denied on those grounds. Moreover, plaintiff's motion concedes that there is no basis for the relief he seeks—even if the scope of that relief were clear. See, Pl. Memo. of Law, ECF No. 187, p. 13 (conceding that 30(b)(6) testimony does not constitute judicial admissions). Plaintiff nonetheless purports to seek to preclude defense witnesses from "offering any new testimony or evidence contrary to the 30(b)(6) testimony without prior notification and argument." Id. He provides no legal basis for this request. Defendants note that there were four 30(b)(6) witnesses in this case, each of whom testified on a number of topics. Thus, at this time, defendants cannot anticipate what testimony might arise at trial that plaintiff might consider "new" or "contrary" based on the vast universe of prior testimony. Critically, it defies logic that defense witnesses would be precluded from offering relevant testimony simply because the plaintiff chose not to inquire on particular topics during discovery. In the absence of any legal authority, or even factual specificity as to what evidentiary matter plaintiff seeks to preclude, the Court should deny this motion.

## POINT VI

### PLAINTIFF IS NOT ENTITLED TO MISSING WITNESS CHARGES FOR WITNESSES HE HAS CHOSEN NOT TO CALL

Plaintiff's request for a missing witness charge should be denied. "A missing witness charge…to infer that the testimony of an uncalled witness might have favored a specified

4

party is appropriate if production of that witness is peculiarly within the power of the other party." United States v. Mittelstaedt, 31 F.3d 1208, 1216 (2d Cir. 1994) (citing United States v. Nichols, 912 F.2d 598, 601 (2d Cir. 1990)).   A court is to consider "all the facts and circumstances bearing upon the witness's relation to the parties, rather than merely on physical presence or accessibility." Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 196 F.3d 409, 432 n.10 (2d Cir. 1999) (quoting United States v. Torres, 845 F.2d 1165, 1170-71 (2d Cir. 1988)).   That a witness is peculiarly within the power of a party "can be shown in two ways: (1) that the witness is physically available only to the opponent; or (2) that the witness has a relationship with the opposing party that practically renders his testimony unavailable to the moving party.' Ranish v. Delta Air Lines, No, 95-7392, 1995 U.S. App. LEXIS 39834, at *7 (2d Cir. Nov. 21, 1995) (citing Oxman v. WLS-TV, 12 F.3d 652, 661 (7th Cir. 1993) (denying adverse inference where plaintiff made no attempt to call witnesses despite contention that their testimony would have been helpful to his case).

Plaintiff has made no effort to satisfy his burden to establish that any of these witnesses are peculiarly within the control of the defendants.  The implied argument that current or former City employees are automatically "peculiarly" within the control of the defendants is directly undermined by the fact that five of six witnesses on plaintiff's witness list are current or former NYPD officers whom the plaintiff intends to call at trial.

Plaintiff's argument boils down to the proposition that the defendants are required to call all witnesses who might offer relevant testimony in support of their case.   He offers no legal support for this argument.  Indeed, defendants anticipate that the Court will likely charge the jury that the parties have an equal opportunity to present evidence and call witnesses.  That is, if plaintiff believes that any of the witnesses he has identified would actually offer testimony

beneficial to his case, then he should call them as witnesses.  Most critically, plaintiff himself has not identified a single witness other than himself who will corroborate his claim that the dispersal orders preceding his arrest were inaudible, despite having been arrested as part of an organized demonstration.

With regard to officers who were never able to be identified, plaintiff has offered no basis to support a missing witness charge regarding their testimony.  That the defendants in this case did not know the names of particular officers who they heard give orders or saw take particular actions cannot support a missing witness charge.  At most, their lack of recollection bears on the credibility of their testimony, which plaintiff is free to challenge at trial.

Plaintiff's repeated arguments that some inference must be drawn from the lack of video of the dispersal orders preceding Chief Esposito's interaction with the plaintiff is also without merit.  While plaintiff asserts that the City had a policy that required that all such dispersal orders be recorded, he has cited to no evidence of any such policy.  Rather, plaintiff asked defendant Esposito if part of TARU's function would be to record warnings to protestors and arrest activity for refusals to comply with such orders. (Esposito Dep. Tr. 52:16-53:8)  Chief Esposito responded that "if they could," and "in a perfect world," these would be part of TARU's function, and further agreed, "there are all kinds of things [that] can prevent that from happening as a realty [sic] on the street[.]" (Id.)   Quite obviously, it is not always possible during an event involving thousands of demonstrators to ensure that every warning or order is captured on video.

As to the request to preclude the defendants from testifying regarding "their speculation about" those witnesses' activities or knowledge, plaintiff seems to be asking the Court to enforce the Rules of Evidence.  Defendants do not intend to offer speculative or otherwise inadmissible evidence.  However, they are permitted to testify regarding their personal

knowledge and observations relevant to the plaintiff's arrest, including information that may have been relayed to them by other members of the NYPD. See Watkins v. Ruscitto, No. 14 Civ. 7504 (AJP), 2016 U.S. Dist. LEXIS 89499, at *13-15 (S.D.N.Y. July 11, 2016) (Under the "fellow officer" rule, also known as the "collective knowledge doctrine," arresting officers do not need to independently determine that probable cause exists as long as the officer ordering the arrest possesses sufficient probable cause to direct it); see also Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007); United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001).  Thus, defendants are permitted to offer their own testimony about information they received that may have been relevant to their assessment of probable cause.

For all of the foregoing reasons, the Court should deny this motion.

## POINT VII

### DEFENSE WITNESSES SHOULD NOT BE FORECLOSED FROM OFFERING RELEVANT TESTIMONY

Plaintiff's next motion also seems to ask that the Court enforce the Rules of Evidence.  And, again, defendants have no intention of offering speculative or otherwise inadmissible evidence. It is unclear specifically what evidence the plaintiff seeks to preclude. On those grounds alone, the Court should deny this motion.  As noted above, police officers are permitted to rely on information obtained or possessed by other officers in order to establish probable cause to arrest.  Accordingly, the defendants should be permitted to offer testimony regarding any information that was relayed to them upon which they relied, or upon the fact that an arrest was made at the direction of another officer.

With regard to testimony regarding other protestors, the defendants must be permitted to testify about the protest generally—their observations and any information they

7

learned prior to or during the event.  While this information would not provide specific probable cause to arrest the plaintiff, it certainly provides context for the plaintiff's actions and the objective reasonableness of the defendants' perception of his actions.  The actions of other protestors—specifically, the other individuals involved in plaintiff's specific protest action—may be relevant to the assessment of probable cause insofar as it bears on the perception of the plaintiff's intent.

For the foregoing reasons, the plaintiff's motion should be denied.

## POINT VIII

## DEFENDANTS' EXHIBIT "C" SHOULD BE ADMITTED

Plaintiff offers no real justification for excluding Defendants' Exhibit "C," which is an NYPD TARU video taken of the event during which plaintiff was arrested, and in which the plaintiff himself appears repeatedly—at least, beginning at 10:50.  This video was disclosed in 2017.  Plaintiff's argument that no defendant previously testified about this video is irrelevant, since the scope of the defendants' deposition testimony was dictated by the questions the plaintiff chose to ask.  Plaintiff cannot now seek to preclude relevant evidence which was properly disclosed based on the nature of his own discovery efforts.  Plaintiff's argument that this video must be authenticated by the videographer is undermined by the fact that he has identified two other NYPD TARU videos as trial exhibits without their videographers. Additionally, the video is date-stamped and depicts the same protest as the other videos listed for trial—confirmed by the date, plaintiff's appearance, and other overlapping details.

If necessary, defendants will seek to amend the JPTO to identify a custodian of records from the NYPD to authenticate Exhibit "C."  The remainder of plaintiff's contentions go

to weight rather than admissibility and do not justify precluding this relevant evidence of the event in which the plaintiff was participating at the time of his arrest.[2] Accordingly, defendants respectfully submit that plaintiff's motion should be denied.

**POINT IX**

**PLAINTIFF SHOULD BE PRECLUDED
FROM REQUESTING A SPECIFIC DOLLAR
AMOUNT FROM THE JURY**

Plaintiff should be precluded from suggesting a specific dollar amount to the jury for the reasons set forth in defendants' motions *in limine*. See Defendants' Motions *in Limine*, Point V. Additionally, for the reasons set forth in defendants' objections to the proposed charge, defendants respectfully submit that an award of punitive damages is highly unlikely to be supported by the evidence in this case.

Plaintiff's argument regarding the impact of Monell evidence on the jury's deliberations underscores defendants' arguments in favor of bifurcating the trial of these issues. See Defendants' Motions *in Limine,* Point I. That is, plaintiff seeks to offer evidence of past settlements of claims against the City of New York as Monell evidence.  Thus, plaintiff contends, to avoid confusion he should be permitted to suggest a damage award in this case—presumably, to argue that the plaintiff should receive a higher award than past settlement amounts.  First, defendants emphatically object to any evidence of past settlements, including the dollar amounts of any settlements, of unrelated actions, even in the Monell phase of the trial. Such figures are not relevant to any determination the jury needs to make in this case regarding

---

[2] Defendants believe it would be prudent for the parties to confer regarding their respective objections to the various videos to be offered, in order to identify any serious objections which require the Court's intervention.

individual or <u>Monell</u> liability.  Evidence of past settlements and amount could unduly influence the jury's deliberations in this case.  Moreover, such evidence is inadmissible under Rule 408 and the terms of the underlying settlement agreements.

Additionally, defendants believe that sharing past settlement amount could actually skew jury deliberations in the opposite direction.  That is, the plaintiff here—having sustained very limited injury, approximately twelve hours in custody and two court appearances—might well be entitled to substantially less than the individual settlements in the unrelated prior cases.  This risk of confusion only furthers the need to bifurcate the individual and municipal liability phases of this trial, to ensure that the jury is focused in the first instance on the specific allegations of this case.  It must be noted that the damages in this case must be determined based on the actual injury suffered by the plaintiff and there is substantial risk that a dollar award could be inflated based on a finding of municipal liability—even though it is black-letter law that such a finding does not entitle the plaintiff to any greater compensation. <u>See</u> <u>DiSorbo v. Hoy</u>, 343 F.3d 172, 182 (2d Cir 2003) (municipal liability is limited to compensatory damages).

For the foregoing reasons, and those set forth in defendants' prior motion, the Court should preclude the plaintiff from requesting a specific dollar amount from the jury.


## POINT X

## SPECIAL INTERROGATORIES MUST BE BASED ON THE EVIDENCE ADDUCED AT TRIAL

Plaintiff's motion regarding special interrogatories seems to conflate jury instructions with special interrogatories.  Defendants agree that qualified immunity is a question

of law to be decided by the Court.  Thus, it would be inappropriate to charge the jury on

qualified immunity or to include the issue on the verdict form.  However, it is appropriate to pose

special interrogatories to ask the jury additional questions the Court may need answered to rule

on qualified immunity.  See Jones v. Treubig, 963 F.3d 214, 232 (2d Cir. 2020).  These questions

are intended to obtain answers to questions that would not be apparent from the jury's general

verdict, but would be necessary for the Court to determine the reasonableness of a defendant's

mistake of fact or law in regard to their qualified immunity defense. Id.  Because these questions

are necessarily tied to the presentation of evidence at trial, it is typically not possible to

determine with precision what questions would be appropriate to ask before trial.  Accordingly,

the plaintiff's motion should be denied.  [3]

**POINT XIII**

**PLAINTIFF'S     PROPOSED     RULE     1006
SUMMARY SHOULD BE PRECLUDED**

Defendants respectfully submit that plaintiff's proposed Exhibit "43" should be

precluded. See Defendants' Motions *in Limine*, Point II.  First and foremost, plaintiff should be

precluded from offering as substantive evidence a chart he has not completed in order to

summarize information he has not clearly identified.  (See, Plaintiff's Memo. of Law, pp. 20-21,

"plaintiff is happy to meet [the requirements of Rule 1006"; regarding Exhibit 43, which

purports to summarize a single case, "the idea being that that [sic] the same type of summary

would be replicated to summarize the others.")  Thus, based on his failure to properly disclose

---

[3] If the Court requires it, defendants are prepared to propose special interrogatories based on
what they anticipate the evidence will be but would reserve the right to request to amend that
proposal at the close of all evidence.

this information pursuant to Rule 26 or even identify it in the Proposed Joint Pre-Trial Order, this evidence must be precluded.

       While plaintiff contends that Rule 1006 exists for "exactly" this purpose, he does not point to a single other case—let alone a <u>Monell</u> claim where such a summary was used to establish municipal notice—in which such a summary has been utilized.   Further, plaintiff overlooks the requirement that a summary chart must be "based upon and fairly represent competent evidence already before the jury." <u>United States v Blackwood</u>, 366 F App'x 207, 212 (2d Cir. 2010) (citing <u>United States v. Conlin</u>, 551 F.2d 534, 538 (2d Cir. 1977).  Here, plaintiff has not listed any of the documents underlying his embryonic chart as trial exhibits, nor was such evidence disclosed pursuant to Rule 26.   Looking past that significant hurdle, most of the documents upon which plaintiff would have to rely would not be independently admissible in this action.  That is, the complaints in unrelated lawsuits could not be admitted to prove the truth of the allegations contained therein—the definition of hearsay, at a minimum—nor could documentation of any settlements of those claims be admitted.  Evidence of settlements would be inadmissible both under Rule 408 and the terms of the settlement agreements in those actions— which expressly prohibit their use as evidence in any other actions.

       For all of the foregoing reasons, and those set forth in defendants' motions *in limine*, defendants respectfully submit that this motion should be denied.[4]

---

[4] Defendants respectfully request leave to submit further briefing if and when the Court permits plaintiff to present this evidence and a complete version of plaintiff's Exhibit "43" is produced, as defendants anticipate objections to the contents thereof.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant deny plaintiffs' motions in their entirety, together with such other and further relief as the Court deems just.

Dated:      New York, New York
            May 5, 2023

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-2486

By:    /s/   _____
            Hannah V. Faddis
            *Senior Counsel*

cc:     VIA ECF
        *All Counsel of Record*