*ORAL ARGUMENT REQUESTED*
*PER INDIVIDUAL PRACTICE 3(G)*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Benjamin Case, *et al.*

*Plaintiffs,*

v.

The City of New York, *et al.,*

*Defendants*

**14-cv-09148 (JLR)(BCM)**

---

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN PARTIAL OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE***

---

**COHEN&GREEN P.L.L.C.**
J. Remy Green
1639 Centre St., Suite 216
Ridgewood, New York 11385
t : (929) 888-9480

**GIDEON ORION OLIVER**
277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682

May 5, 2023

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................ii

TABLE OF AUTHORITIES..........................................................................................iv

PRELIMINARY STATEMENT ......................................................................................1

ARGUMENT..................................................................................................................1

    I.    Plaintiff does not oppose — and indeed, sought similar relief to — certain requests. ....1

    II.    Trial should not be bifurcated in this *Monell*-centric case (responding to Point I). ..........1

        A.    Defendants omit that bifurcation is the exception, not the rule. .............................2

        B.    This case is fundamentally a *Monell* case, and the facts cannot be neatly separated into two phases.........................................................................................................3

        C.    Bifurcation would not lead to any efficiency gains (in fact, it would be inefficient) and would likely lead to jury confusion.......................................................................6

        D.    No prejudice here is "undue" to Defendants, but could be to Plaintiff..................7

    The Court has already ruled that past litigation on the substantive issues here presents a jury issue, and Defendants' argument about the mode of presentation ignores the existence of Fed. R. Ev. 1006 (responding to Point II)....................................................................................8

    III.    8

        E.    Defendants' arguments overlook the existence of Fed. R. Ev. 1006......................10

    IV.    Plaintiff should be allowed to use amended policies about giving orders to disperse and opportunities to disperse if Defendants open the door by suggesting it would be at all infeasible to give such orders, and other related context (responding to Point III)..............................................12

V.    Plaintff should be allowed to refer to the City's lawyers as what they are — "City attorneys" — and Defendants should not be allowed to mislead the jury about who will pay the verdict (responding to Point IV). ...................................................................................................14

     A.    A bar on saying who the lawyers at trial represent is unwarranted. ........................14

         If the Court denies the relief sought in Point III of Plaintiff's motion *in limine*, Plaintiff should be allowed to clarify the realities of indemnity if Defendants open the door. ...................................................................................................16

     B.    16

VI.    Plaintiff should be allowed to suggest a specific dollar figure to the jury (responding to Point V).  16

VII.    Plaintiff should be allowed to present relevant disciplinary history, personnel files, and individual lawsuit history (responding to Point VI). ..........................................................................18

VIII. Plaintiff has no intention to discuss "unrelated" claims of misconduct, but Defendants' view of what is related is unduly narrow (responding to Point VII). .................................................20

IX.    NYPD policies and procedures are relevant both on the *Monell* case and outside it (responding to Point IX). ....................................................................................................21

X.    Defendants' request to amend the caption to exclude the City is waived (responding to footnote 8). .....................................................................................................................24

  CONCLUSION ....................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

A*dames v G.B. Rests. Inc.*,
 2014 US Dist LEXIS 134771 (WDNY Sep. 24, 2014) ....................................................15

*Amato v. City of Saratoga Springs*,
 170 F.3d 311 (2d Cir. 1999) ........................................................................................2

*Bermudez v City of NY*,
 2019 US Dist LEXIS 3442 (EDNY Jan. 8, 2019)..........................................................20

*BP Amoco Chem. Co. v Flint Hills Resources, LLC*,
 2009 US Dist LEXIS 131268 (ND Ill July 28, 2009).......................................................9

*Case v City of NY*,
 408 F Supp 3d 313 (SDNY 2019) .........................................................................*passim*

*Collado v. City of New York*,
 2017 WL 4533772 (S.D.N.Y. Sept. 27, 2017)...............................................................19

*Consorti v. Armstrong World Industries, Inc.*,
 72 F.3d 1003 (2d Cir. 1995) ...................................................................................14, 15

*Curtis v Perkins*,
 781 F3d 1262 (11th Cir 2015).......................................................................................9

Dinler v City of NY,
 2012 US Dist LEXIS 141851 (SDNY Sep. 30, 2012)......................................................4

*Dunton v. County of Suffolk*,
 729 F.2d 903 (2d Cir. 1984) .........................................................................................7

*Fin. Guar. Ins. Co. v Putnam Advisory Co., LLC*,
 2020 US Dist LEXIS 9088 (SDNY Jan. 17, 2020) ........................................................20

*Galapo v City of NY*,
 95 NY2d 568 (2000) ...............................................................................................18, 19

*Gavin v City of NY*,
 2021 US Dist LEXIS 159908 (SDNY Aug. 24, 2021)....................................................3, 4

*Gogol v. City of New York*,
 No. 15-CV-5703, 2017 U.S. Dist. LEXIS 221874, 2018 WL 4616047 (S.D.N.Y. Sept. 26, 2018)
 ............................................................................................................................20

*Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.*,
  No. 13-CV-11544, 2015 WL 4934628 (E.D. Mich. Aug. 18, 2015) ...............................................13

*Grimes v State*,
  1997 Tex. App. LEXIS 5637 (Tex Ct App Oct. 30, 1997)...............................................................10

*Henderson v. City of New York*,
  571 F. App'x 42 (2d Cir. 2014) ...................................................................................................20

*Hernandez v. Kelly*,
  No. 09-CV-1576 (TLM) (LB), 2011 U.S. Dist. LEXIS 57114 (E.D.N.Y. May 27, 2011) ............12

*Ingles v. City of New York*,
  2005 U.S. Dist. LEXIS 11100 (SDNY June 7, 2005) ...................................................................6

*Jean-Laurent v. Hennessy*,
  840 F. Supp. 2d 529, 550  (E.D.N.Y. Oct. 24, 2011)...................................................................12

*Jeanty v. County of Orange*,
  379 F. Supp. 2d 533 (S.D.N.Y. 2005)...........................................................................................2

*Lightfoot v Union Carbide Corp.*,
  110 F3d 898 (2d Cir 1997) .........................................................................................................14

*Monaghan v. SZS 33 Assocs.*,
  827 F. Supp. 233 (S.D.N.Y. 1993)................................................................................................2

*Morales v. New York Dep't of Labor*,
  No. 06-CV-899(MAD), 2012 WL 2571292 (N.D.N.Y. July 3, 2012)............................................11

*Nibbs v. Goulart*,
  822 F. Supp. 2d 339 (S.D.N.Y. 2011)...........................................................................................16

*Nnodimele v. Derienzo*,
  2016 WL 3561708 (E.D.N.Y. June 27, 2016) ..........................................................................18, 19

*Pavlovich v. City of New York*,
  1992 U.S. Dist. LEXIS 13070 (SDNY Aug. 31, 1992) ...................................................................6

*Pavone by Pavone v Gibbs*,
  1997 US Dist LEXIS 16530 (EDNY Sep. 29, 1997)...........................................................2, 3, 4, 5

*Providencia V. v. Schutlze*,
  2007 U.S. Dist. LEXIS 39980 (S.D.N.Y. May 31, 2007) ...............................................................4

*Randi A. J. v. Long Island Surgi-Center*,
  46 A.D.3d 74 (2nd Dept. 2007)......................................................................................................5

*Ricciuti v. New York City Trans. Auth.*,
  796 F. Supp. 84 (S.D.N.Y. 1992) ................................................................................. 2

*Rocanova v. Equitable Life Assur. Socy. of U.S.*,
  83 N.Y.2d 603 (1994) .................................................................................................. 5

*Romero v. County of Lake*,
  60 F.3d 702 (10th Cir. 1995) ...................................................................................... 18

*Schoolcraft v. City of N.Y.*,
  133 F. Supp. 3d 563 (S.D.N.Y. 2015) .......................................................................... 4

*Skinner v City of NY*,
  2017 US Dist LEXIS 104650 (EDNY Apr. 7, 2017) .................................................... 12

*Smith v. City of New York*,
  2015 WL 4643125 (S.D.N.Y. Aug. 5, 2015) .......................................................... 17, 18

*Smith v. Freland*,
  954 F.2d 343 (6th Cir. 1992) ...................................................................................... 18

*State v Watson*,
  2022 N.J. Super. Unpub. LEXIS 1295 (Super Ct App Div July 18, 2022) ..................... 9

*Tolbert v. Queens Coll.*,
  242 F.3d 58 (2d Cir. 2001) .......................................................................................... 21

*TVT Records v. Island Def Jam Music Grp.*,
  250 F. Supp. 2d 341 (S.D.N.Y. 2003) .......................................................................... 11

*United States v Blackwell*,
  436 F App'x 192 (4th Cir 2011) .................................................................................... 9

*United States v. Garcia*,
  291 F.3d 127 (2d Cir. 2002) ........................................................................................ 16

*United States v Yousef*,
  327 F3d 56 (2d Cir 2003) .............................................................................................. 9

*Williams v. McCarthy*,
  05 Civ. 10230, 2007 U.S. Dist. LEXIS 79151 (S.D.N.Y. Oct. 25, 2007) ...................... 12

## Other Authorities

Fed.R.Civ.P. 30(b)(6) ...................................................................................................... 19

Fed. R. Civ. P. 42 ............................................................................................................. 5

Fed. R. Ev. 407 .......................................................................................................... 11, 12

Fed. R. Ev. 1006 ..................................................................................................7, 8, 9

Fed. R. Evid. 404(b) .................................................................................................16

1 Kenneth S. Broun, et al., *McCormick on Evidence* § 185 (7th ed. 2013) .................13

N.J. R. Ev. 70(1)(g) ....................................................................................................9

N.J. R. Ev. 1006 ..........................................................................................................9

## PRELIMINARY STATEMENT

As set out below, Plaintiff Mark Kushneir submits this memorandum in partial opposition to Defendants' motions *in limine*. For the reasons below, except as specified, he respectfully requests the Court deny Defendants' motion. As with his own motion *in limine,* for a full statement of the relevant factual background, Plaintiff respectfully refers the Court to the parties' statements of material facts submitted in their summary judgment-related briefing, and to the Court's decision on the summary judgment motion.

## ARGUMENT

### I.   Plaintiff does not oppose — and indeed, sought similar relief to — certain requests.

Points VIII (claims that have been withdrawn)[1] and XII (amending the caption) in Defendants' motion *in limine* (ECF No. 195, "D MIL") are all issues where the parties appear to be in agreement. Except as discussed below for Point VIII, the parties do not disagree, and both largely sought the same relief. *Accord,* ECF No. 187 ("P MIL") at Point I and p. 1 n. 2; *see also,* ECF No. 191 at 1.

### II.   Trial should not be bifurcated in this *Monell*-centric case (responding to Point I).[2]

This case is a case with a set of *Monell* claims at its core. It is not a run-of-the-mill protest case. Rather, it is a case fundamentally ***about*** the City's policies and practices during an Occupy Wall Street protest. Seeming to recognize that, at least during discovery, the City never moved to bifurcate *Monell* discovery. Rather, the City is — at this late date — essentially trying to make Plaintiff's presentation of his case less coherent by stopping the jury from hearing the core of the case until a second phase, and undermining the way Plaintiff has planned to present the case. That effort should fail, for essentially two reasons: First, this case is fundamentally a *Monell* case. Second, bifurcation would, in

---

[1] As set out further below, on this point, Plaintiff's view of exactly how this principle cashes out appears to be somewhat different than Defendants' — but the underlying idea that neither party should be spending time talking about the dismissed claims or parties **as** claims or parties is one where the parties agree.

[2] Defendants also say the Court "must" bifurcate (D MIL at 2), while exclusively citing authority that the decision is discretionary.

the circumstances of this case, be *in*-efficient, and instead only lead to jury confusion.   And Defendants seemingly apply the wrong standard in arguing for bifurcation, which creates further problems.

### A.   Defendants omit that bifurcation is the exception, not the rule.

Defendants seem to argue — given that they cite nothing specific about this case — that *Monell* bifurcation must occur in any *Monell* case.   But that is not so.   "The presumption is that all claims in a case will be resolved in a single trial, and it is only in exceptional circumstances where there are special and persuasive reasons for departing from this practice that distinct causes of action asserted in the same case may be made the subject of separate trials." *Jeanty v. County of Orange*, 379 F. Supp. 2d 533, 549 (S.D.N.Y. 2005) (quotations and citations omitted).   That is, put simply, "separate trials remain the exception rather than the rule." *Pavone by Pavone v Gibbs,* 1997 US Dist LEXIS 16530, at *3 (EDNY Sep. 29, 1997).

Rule 42(b) "is reserved for truly extraordinary situations of **undue** prejudice." *Monaghan v. SZS 33 Assocs.*, 827 F. Supp. 233, 246 (S.D.N.Y. 1993) (emphasis in original). In deciding whether to grant a motion to bifurcate, the Court needs to consider whether a particular party may be prejudiced or whether the litigation of the first issue may eliminate the need to litigate remaining issues. *Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999). The key inquiries are whether in the absence of bifurcation, a party will be prejudiced, the proceedings will be expedited, or convenience provided. *Ricciuti v. New York City Trans. Auth.*, 796 F. Supp. 84, 86 (S.D.N.Y. 1992).   And put in general terms, "[s]eparate trials are not appropriate when 'issues, witnesses and documentary evidence overlap.'" *Pavone*, 1997 US Dist LEXIS 16530, at *3.

A necessary consequence of accepting Defendants' version of the standard is that there is no limiting principle.   As one court observed about the same kind of argument Defendants make here:

> Defendants have made no showing of undue prejudice particular to the circumstances of this case. They assert that there would be prejudice to the City if the jury finds the individuals acted unconstitutionally, and prejudice to the individual defendants if the jury finds that the City engaged in a pattern of unconstitutional conduct. But there is no limiting principle to

defendants' argument. If defendants were granted the relief they seek on this record based only upon speculation and their generalized assertion of prejudice, then the trial of virtually any civil rights action against a municipality and its individual employees would require bifurcation.

*Pavone by Pavone v Gibbs*, 1997 US Dist LEXIS 16530, at *5 (EDNY Sep. 29, 1997).  Just so.  The standard requires a meaningful, case-specific showing.  And as explained below, the City cannot make that showing.

### B.  This case is fundamentally a *Monell* case, and the facts cannot be neatly separated into two phases.

The case going to trial, at its core, grows out of "a causal link between Kushneir's false arrest claim and the Dispersal Orders, §§ 240.20(5), and 240.20(6) Policies."  *Case v City of NY*, 408 F Supp 3d 313, 330 (SDNY 2019).  As seen in Point IX below and elsewhere herein, evidence about NYPD policies, procedures, and training related to protest policing, including arrest processing and the creation of the arrest processing paperwork that forms part of the grounds for Plaintiff's fair trial rights claim against Defendant Maldonado, is relevant to Plaintiff's core constitutional, non-*Monell* claims.  Beyond that, Defendant Esposito was Chief of Department, the highest-ranking uniformed NYPD member, for many years, and as such was personally involved in not only decades of policing the protests and utilizing the training that are at issue in Plaintiff's *Monell* case, but also about lessons learned, best practices, and changes the NYPD made – or did not make – in response to those events. He therefore has personal knowledge about and experience with the relevant policies, practices, and training, but also about many of the lawsuits involved in Plaintiff's *Monell* case, including the underlying events, and any resulting changes to the relevant policies or training. It would be confusing and inefficient to split up presenting such evidence on the core constitutional and the *Monell* claims, much of which will substantially overlap.

With respect to Mr. Kushner's arrest, which Defendant Esposito was personally and directly involved in, the evidence, including the video evidence, establishes that Defendant Esposito yelled a dispersal order "through cupped hands," that Mr. Kushneir could not even hear properly, while

protesters were blocked in by barriers, and "two seconds after the order shown in the video, Esposito instructed officers to make arrests." *id.* at 319, moving in to arrest Mr. Kushneir.  While that order was impossible to comply with — and for that, and other reasons, was not a basis for arrests — Esposito was following a long-standing practice for the NYPD, consistent with the deficient NYPD training that is the at the heart of Plaintiff's *Monell* claims:  the City has an "uninterrupted history of NYPD officers mishandling dispersal orders at protests" in the way Esposito did here,  *Gavin v City of NY*, 2021 US Dist LEXIS 159908, at *15 (SDNY Aug. 24, 2021).

On the non-*Monell* claims arising from Mr. Kushneir's arrest, Defendants' factual presentation will apparently be the uncorroborated testimony of Chief Esposito that some unknown person, without recording it in any way, gave an adequate order to disperse, such that the facially insufficient order Esposito gave – the only order documented on the only video of Plaintiff's arrest - would not matter, because, if that version of events is true, Esposito's order was only a "final" order.  *See, e.g., Case*, 408 F Supp 3d at 319 ("The parties dispute whether Esposito gave additional orders of dispersal prior to the start of filming. Def. 56.1 ¶ 108"); at 322 (noting Esposito testified "another officer gave a pre-scripted order to disperse prior to Esposito's own 'final' order, but that Esposito could not recall who that officer was").  Part of the evidence the jury must have to evaluate the reasonableness of Esposito's actions, and some of the proof showing why Esposito's testimony is not credible, will involve showing the City's general policies and training on the Dispersal Orders and disorderly conduct enforcement policies, and giving and recording dispersal orders, which will also be relevant as to factual disputes such as, for example, whether Esposito's arrest orders were reasonable, as well other issues bearing on Esposito's credibility, like the **absence** of the kinds of documents that should exist, had a prior dispersal order really been given.

Put otherwise, the underlying factual claims here are very much intertwined with facts related to the City's policies, practices, and training underpinning the *Monell* theory — and those facts very

much bear on both the reasonableness of Esposito's actions and on Esposito's credibility.  Here, *Shoolcraft* is instructive on why bifurcation is not appropriate in this case:

> Plaintiff convincingly argues that there will be significant overlap between the evidence he will offer in support of his *Monell* claims and in support of the other claims that survived summary judgment. See Pl.'s Mem. in Opp'n 4-7. Consequently, efficiency considerations do not favor bifurcation. Moreover, the substantial prejudice which City Defendants contend will result from permitting the jury to hear evidence regarding quotas or the blue wall of silence, *id.* at 19, will be adequately mitigated through the ubiquitous and efficacious means of limiting instructions, jury charges and limiting instructions. Consequently, the motion to bifurcate is denied.

*Schoolcraft v. City of N.Y.*, 133 F. Supp. 3d 563, 571 (S.D.N.Y. 2015). Similarly, in *Providencia V*, the court denied a motion to bifurcate the plaintiff's *Monell* claim after considering, among other factors, "whether the documentary and testimonial evidence on the issues overlap." *Providencia V. v. Schutlze*, 2007 U.S. Dist. LEXIS 39980, at *21 (S.D.N.Y. May 31, 2007); *see also, Pavone,* 1997 US Dist LEXIS 16530, at *3 (same).

Here, there is no question much of the core constitutional claim and *Monell* evidence, at a minimum, "overlap."  2007 U.S. Dist. LEXIS 39980, at *21.  While establishing the longstanding deficiencies and notice of those deficiencies in the City's approach to and training related to protest policing directly bears on whether the City has a policy for *Monell* purposes, it is also impossible to extract that history from the jury's task in deciding what in fact happened before the NYPD unit that records dispersal orders and arrests at protests started filming.  Indeed, the prejudice to Plaintiff from the jury not having the context that the City has a long history of giving impossible-to-comply-with dispersal orders that it claims are consistent with its practices and training — something Courts have found the City liable for, so the City cannot argue otherwise (*Dinler v City of NY*, 2012 US Dist LEXIS 141851, at *36 (SDNY Sep. 30, 2012)[3] — would be significant.  In short, the facts not only overlap

---

[3] "Because the marchers had no opportunity to comply with Monahan's so-called dispersal order, the Court finds that there was no probable cause to arrest even protesters at the *front* of the march who might have been able to hear the order" (emphasis in original).  Indeed, the Court itself made a point of footnoting that factual finding in its recitation of what happened to Mr. Kushneir its summary judgment opinion, presumably because of how striking the parallel was.  *Case* , 408 F Supp 3d at 322, n 5.

— which would be sufficient to deny the motion – beyond that, "the issues sought to be tried separately are inextricably intertwined." *Pavone*, 1997 US Dist LEXIS 16530, at *3.

Moreover, as also touched on in the prejudice discussion below, there is a meaningful interaction between Plaintiff's *Monell* claims and Defendants' punitive damages arguments.  That is, an important consideration in whether to award punitive damages against a defendant is whether the defendant's actions involved an isolated incident, or were "part of a pattern of similar conduct directed at the public generally." *Rocanova v. Equitable Life Assur. Socy. of U.S.*, 83 N.Y.2d 603, 613 (1994); *see also Randi A. J. v. Long Island Surgi-Center*, 46 A.D.3d 74, 85-86 (2nd Dept. 2007) ("Whether the injury-producing conduct was an isolated event or only the latest incident in a continuing pattern of similarly reckless behavior was an important factor to be weighed by the trier of fact in determining whether an award of punitive damages was warranted").  Even without a *Monell* claim, Esposito's – and the City's - conduct across a variety of protests, towards citizens in general, were open, notorious, and part of pattern, as opposed to a "one off" incident that could not have been anticipated.  Thus, far from improperly prejudicing the co-defendants, evidence of Esposito's — and the City's more general, given Esposito's executive role — pattern and practice of malfeasance is "fair game" and an important element of Plaintiff's claims.

Thus, there is substantial overlap between the evidence that will be relevant to the claims against the individual defendants and the municipality, so that bifurcation will not advance the goals of Fed. R. Civ. P. 42, but rather frustrate them by requiring multiple trials and the repeated introduction of identical evidence, in some cases from the same witnesses. *Ingles v. City of New York*, 2005 U.S. Dist. LEXIS 11100 (SDNY June 7, 2005); *Pavlovich v. City of New York*, 1992 U.S. Dist. LEXIS 13070 (SDNY Aug. 31, 1992).

### C.  Bifurcation would not lead to any efficiency gains (in fact, it would be inefficient) and would likely lead to jury confusion.

As noted in the JPTO, there are few — if any — efficiency gains from bifurcation, and by contrast, bifurcation would require Plaintiff to call back multiple witnesses.  Each individual

Defendant would need to walk back through the entire series of events here (unless they essentially stipulate to *Monell* liability, if the jury finds for Plaintiff on the underlying claim), and confirm they were acting pursuant to City policy.  And since, as also discussed in Point (D) below, the City's approach during the *Monell* phase will likely suddenly be to deny the existence of policies and/or training individual defendants used for cover during the first phase, examination of each of those witnesses will involve significant cross-examination, readbacks from the first phase of trial, and the like.  Each witness should testify once — and that can only happen appropriately in a single trial.

Nor is it an answer, as Defendants suggest, to say "the testimony offered would be distinct in each phases and therefore not duplicative or a waste of time."  D MIL at 3.  Rather, Plaintiff will need to re-examine witnesses — now with the proper opening statement and frame for the jury to understand **why** certain facts are being repeated — on the same topics and facts.  If the jury has not heard **why** it is significant for Plaintiff's case — and instead only why it benefits Defendants' case — to hear that Defendant Esposito acted according to policy, then the jury cannot be expected to recall the significance or precise contours of that testimony, after many more days of testimony, instructions, closings, deliberations, and a verdict.  That is, there is no way to avoid significant duplication of testimony if **this** case is bifurcated.

Additionally, if the jury learns that it would be required to sit for a second phase of the trial — which it very well may — there is a meaningful risk that real life burden would subconsciously alter how jurors are willing to discuss, compromise, and otherwise reach a result.

### D.  No prejudice here is "undue" to Defendants, but could be to Plaintiff.

Finally, Defendants' protests about the potential risk to individual officers — who occupy = high ranks in the NYPD — are misplaced.  Those officers have consented to representation jointly with the City.  *See generally, Dunton v. County of Suffolk,* 729 F.2d 903, 908-09 (2d Cir. 1984) (exploring the inherent conflict in such joint representation).  The City has agreed to indemnify them from all damages (indeed, if that were not the case, it is hard to see how the joint representation could be

ethical).  The individual defendants have barely existed as an entity in this case, if at all.  This is a case that has been wholly driven by the City itself.

By contrast, if the trial is bifurcated, Plaintiff will be prejudiced by the potential for jury confusion and inconsistent fact finding.  Again, if the trial is bifurcated, presumably counsel for Defendants will spend the entire initial phase arguing individual defendants were following NYPD procedure in order to avoid or minimize punitive damages.  By contrast, once the *Monell* phase starts, suddenly the same lawyer will begin trying to suggest no policies at all governed the conduct of anyone involved.  Instead of having to focus on what is true, with bifurcation, Defendants can essentially attempt to have their cake and eat it too, without facing the credibility risk of that approach.  That is, if individual defendants want to spend the initial phase talking about how the City's policies excuse their conduct, the jury should have the option to credit that testimony fully.  And because the policies here drove nearly everything that happened, artificially cutting that out of the picture will prejudice Plaintiff.

### III. The Court has already ruled that past litigation on the substantive issues here presents a jury issue, and Defendants' argument about the mode of presentation ignores the existence of Fed. R. Ev. 1006 (responding to Point II).

This Court has *twice* ruled that Plaintiff can rely on the facts and outcomes in past litigation involving similar claims of police misconduct, including similar *Monell* claims based on similar protest policing policies and tactics and failures to train in the protest policing-related topics that the Court has ruled are in play with respect to Plaintiff's *Monell* claims that survived summary judgment. *See **Case v City of NY**,* 233 F Supp 3d 372, 404-08 (SDNY 2017) ("Based on the dozens of lawsuits and decade of litigation over these incidents, Plaintiffs plausibly allege that the City knew or should have known that these policies and practices led to unconstitutional results. Plaintiffs have set forth sufficient allegations to support their claim that the City failed to properly train its officers to ensure that similar constitutional violations would not be repeated, and this failure is the same training failure that led to Plaintiffs' constitutional deprivations"); ***Case v City of NY**,* 408 F Supp 3d 313, 328

8

(SDNY 2019) ("Here, the Court holds that the number and persistence of legal challenges brought, sometimes resulting in plaintiffs' verdicts and other times in settlements, is sufficient to create a jury question on the issue of notice"); *see also, e.g.*, *Lynch v. City of New York*, 952 F.3d 67, 81-82 (2nd Cir. 2020); *Osterhoudt v City of NY*, No. 10 CV 3173 (RJD) (RML)*, 2012 US Dist. LEXIS 139700, at *4-7 (EDNY Sep. 27, 2012). In making those prior rulings in this matter, the Court rejected the same arguments Defendants are now recycling here, citing much of the same authority. Defendants never moved for reconsideration of or otherwise challenged those rulings. <u>The only new case Defendants cite, *Monahan v. City of New York*, 202 U.S. Dist. LEXIS 59124 (SDNY Mar. 30, 2022), follows the arguments that the Second Circuit rejected in *Lynch*.</u> The Court should not allow Defendants to have a third bite at that apple.

Since the Court has already ruled that some evidence about those lawsuits and the underlying events and their outcomes is relevant to Plaintiff's *Monell* claims, the Court should reject Defendants' attempt to sidestep the Court's prior rulings on this point by taking the position, as they are, that Plaintiff can present *no* evidence regarding the *clearly relevant* history of litigation over the City's prior policies, practices, and training related to the enforcement of the disorderly conduct statutes, dispersal orders, and protest policing. The Court must view Defendants' complaints about the content of Plaintiff's Proposed Trial Ex. 43 against the backdrop of their refusal to agree that *any* evidence regarding prior litigation is relevant or admissible. While Defendants offer selective, and self-serving, comments and abridged summaries of some of the facts and claims of some of the cases in Plaintiff's Proposed Trial Ex. 43, claiming none are relevant, the exhibit lists most of the lawsuits that were included in ¶ 26 of the Second Amended Complaint, and which the Court analyzed and considered in both its decision on the motion to dismiss and on the motion for summary judgment. Although Plaintiff could, in theory, offer to present the jury with evidence in the form of complaints, discovery, verdicts, and settlements in such cases, Plaintiff has proposed using a summary under Fed.R.Ev. 1006

instead.   Should the Court reject Plaintiff's arguments on this point, Plaintiff will seek to use complaints, discovery, verdicts, and settlements, instead.

### E.  Defendants' arguments overlook the existence of Fed. R. Ev. 1006.

Defendants' arguments about the form for presenting the history of litigation over the same training and tactics at issue here — that there are some unspecified "admissibility issues of the exhibit itself [under] Fed. R. Evid. 403, 802, 901" (D MIL at 7) — overlook the function of Fed. R. Ev. 1006. In the first instance, because Defendants fail entirely to discuss Rule 1006, notwithstanding that the exhibit is titled "Prior Litigation Outcome Summary Spreadsheet," listed in the JPTO with the caveat "This exhibit is not intended to be presented as primary evidence, but rather, a summary — as explicitly permitted by Fed. R. Ev. 1006 — of voluminous underlying documents, all of which would be judicially noticeable on their own as Court records for the fact of what they say, or for estoppel purposes with regard to fully litigated issues (or otherwise statements of a party opponent, as far as settlements signed by the City)" (ECF No. 191 at 17 n. 23).   Indeed, in sending the exhibit to Defendants, Plaintiff wrote:

> Regarding Exhibit 43, the Prior Litigation Outcome Summary Spreadsheet, as you know, the Court has previously "h[eld] that the number and persistence of legal challenges brought, sometimes resulting in plaintiffs' verdicts and other times in settlements, is sufficient to create a jury question on the issue of notice," such that we would be able to present evidence regarding those suits and their outcomes to the jury. *Case v City of NY*, 408 F Supp 3d 313, 328 (SDNY 2019).   Rather than – or perhaps in addition to - presenting a stack of complaints, decisions, verdicts, and so on to the jury, we believe a Fed. R. Ev. 1006 summary makes sense here. Attached is a rough draft including a non-exhaustive list of some of the relevant cases and rough draft summary information as to one case (*Haus*). As part of our *in limine* motions, we will be asking the Court to allow us to use something like Exhibit 43 as part of our *Monell* case, so Defendants will have the opportunity to oppose in response to our motion. Although Defendants have equal access to the underlying documents and information, we are in the process of compiling a set of all relevant documents to "make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place" for Rule 1006 purposes, and also note that the full dockets are available at the SDNY courthouse.

Yet, Rule 1006 does not appear anywhere in Defendants' motion.  Given that Defendants do not even mention — let alone discuss — Rule 1006, the Court should deem any objection to the summary as such as waived.

As set out in Plaintiff's own motion *in limine* (P MIL at 14-15), Plaintiff intends to make the showing the Court already found "create[s] a jury question on the issue of notice" (*Case*, 408 F Supp 3d at 328 by using Rule 1006 to cut down the time needed to present the voluminous history of protest litigation to the jury.  Rule 1006 explicitly permits a party to "use a summary, chart, or calculation to prove the content of voluminous writing." Fed. R. Ev. 1006.  By its very nature, any such chart would be presented **without** any "witness … who could testify about" (D MIL at 8) of whatever "voluminous writing" is being summarized.  Fed. R. Ev. 1006.  Indeed, "[t]he underlying documents themselves, however, do not need to be admitted for a Rule 1006 chart to come into evidence." *United States v Blackwell*, 436 F App'x 192, 199 (4th Cir 2011).

The Second Circuit has "regularly affirmed the use of such charts," because a party is "entirely within its rights to use charts to draw the jurors' attention to particular evidence culled from a voluminous set of records." *United States v Yousef*, 327 F3d 56, 158 (2d Cir 2003).

Any concerns under Rule 403 (prejudice) can be addressed by including whatever information Defendants believe is necessary for context in the summary itself.

Any concern under Rule 802 (hearsay) is fundamentally misplaced.  As explained by a New Jersey appellate court analyzing the similarly[4] worded New Jersey rules, a summary that does not otherwise meet hearsay requirements comes in under Rule 1006 precisely because a summary "merely assembled and contained summaries of portions of" underlying records.  *State v Watson*, 2022 N.J. Super. Unpub. LEXIS 1295, at *32 (Super Ct App Div July 18, 2022).  *Accord also, BP Amoco Chem. Co. v Flint Hills Resources, LLC*, 2009 US Dist LEXIS 131268, at *12 (ND Ill July 28, 2009) ("Once the proponent of a summary has established that certain records [being summarized] are, in fact, business records, a summary of those records is admissible under Rule 1006, subject to that rule's separate requirements"); *Curtis v Perkins*, 781 F3d 1262, 1266 (11th Cir 2015) ("Whether the trustee's Rule 1006

---

[4] The primary difference between the New Jersey rule and the current federal rule is that, unlike the federal rule, N.J. R. Ev. 1006 requires a summary to be "presented by a qualified witness" (an artifact from prior N.J. R. Ev. 70(1)(g)), while the federal rule has no such requirement.

summaries were admissible depends on whether he made both of those showings **for the underlying documents**…”) (emphasis added).  As one court explained, applying the substantively identical Texas rules:

> “A summary necessarily is hearsay as it is someone's assertion of what the underlying material contains. Thus, rule 1006 provides for admission of a summary under certain circumstances notwithstanding its inherent hearsay character

*Grimes v State*, 1997 Tex. App. LEXIS 5637, at *12 (Tex Ct App Oct. 30, 1997).  Just so.

For precisely the same reasons, a concern under Rule 901 (authentication) is also a basic misreading of how Rule 1006 works:  the summary itself need not be authenticated, only the underlying records.[5]  And since the records here are all court records, no authenticity issues exist, and all records are available to any party (although Plaintiff will also provide copies of a narrower range of what he believes are the relevant records — and what he proposes to draw his summary from specifically — well in advance of trial).

In sum, Defendants’ motion seems to mistake a summary under Rule 1006 for an offer of substantive evidence in its own right.  Since that is not what a Rule 1006 summary is, Defendants’ motion fails.[6]

## IV. Plaintiff should be allowed to use amended policies about giving orders to disperse and opportunities to disperse if Defendants open the door by suggesting it would be at all infeasible to give such orders, and other related context (responding to Point III).

Defendants argue that Plaintiff should not be allowed to introduce subsequent remedial measures, without specifying any such measures their motion addresses.  *See generally*, D MIL at 8-9.  Plaintiff does not have any intention to introduce subsequent remedial measures to establish

---

[5] Defendants do not appear to raise any challenge to the underlying records — nor could they.  All the records being summarized are government records that are judicially noticeable for the fact of their contents (e.g., what was alleged, what results on various motions, what findings courts made, and so on).  To the extent necessary, Plaintiff respectfully cross moves for judicial notice of the underlying records, constituting the full dockets of the cases referred to in ¶ 26 of the Second Amended Complaint and in Plaintiff’s Proposed Trial Ex. 43.

[6] As noted in Plaintiff’s own motion, Plaintiff remains committed to making sure the summary exhibit is as evenhanded as possible, if there are things Defendants want to include in the summary.  The primary reason a full chart is not prepared is that before doing the potentially massive task of preparing the exhibit, Plaintiff wants to know whether there is any information or category of information Defendants will agree on, or insist on, including in the chart.

culpability.  However, depending on the testimony of Defendants' witnesses — or the arguments Defendants' counsel makes — such measures may ultimately bear on other issues, "such as impeachment or — if disputed — ….the feasibility of precautionary measures."  Fed. R. Ev. 407.

While Defendants do not explain why they are making this motion, it is likely because the City has since amended its policies and training about protest policing, disorderly conduct, orders to disperse, and the need to give an opportunity to comply with those orders.  Some of those changes have been publicly disclosed in the media.[7]   The City has touted and relied on other changes to say that claims for injunctive relief  brought on behalf of thousands of protesters who took to the streets in the summer of 2020 in response to the police murder of George Floyd. *See, e.g., In re NY City Policing During Summer 2020 Demonstrations*, 548 F Supp 3d 383, 397 (SDNY 2021) ("Here, Defendants contend that Plaintiffs' claims for forward-looking injunctive and declaratory relief are moot because the City has already taken steps to address police misconduct and, as a result, there is no expectation that the events of last summer will recur").

Plaintiff does not intend to use those amendments to prove notice.  *Cf.* D MOL at 9, *citing Boddie v. City of N.Y.*, 2016 U.S. Dist. LEXIS 50248, at *8 (S.D.N.Y. Apr. 13, 2016) (as Defendants describe it, "rejecting report on NYPD policies and practices published six months after plaintiff's alleged constitutional violation as evidence that the City was on notice of a pattern of misconduct"). But if Defendants argue that providing meaningful opportunities to disperse, audible orders, or training on any of those things was not feasible, Plaintiffs obviously would need to show the jury that not only were they feasible, but the City *has* done more than they were doing before the Occupy Wall Street protests.

---

[7] *See, e.g.,* Bolger, John and Speri, Alice. "NYPD 'Goon Swuad' Manual Teaches Officers to Violate Protesters' Rights." *The Intercept*. April 7, 2021. Available online at https://theintercept.com/2021/04/07/nypd-strategic-response-unit-george-floyd-protests/ (last accessed May 5, 2023) (publishing March 2019 Strategic Response Group ("SRG") Guide at https://www.documentcloud.org/documents/20584527-strategic_response_group_guide and SRG Field Force Modules at https://www.documentcloud.org/documents/20584526-srg_field_force_modules).

Beyond that, on this point, and on other aspects of their *in limine* motions, without Defendants' specifying what evidence they intend to preclude, it is hard to oppose the motion — and the Court can and should deny it on that basis alone.   *See Morales v. New York Dep't of Labor*, No. 06-CV-899(MAD), 2012 WL 2571292, at *2 (N.D.N.Y. July 3, 2012) (in a discrimination case, denying motion in limine to preclude all evidence relating to a workers' compensation claim because the court held that it was unable to rule on the evidentiary issue outside a factual context); *TVT Records v. Island Def Jam Music Grp.*, 250 F. Supp. 2d 341, 345 (S.D.N.Y. 2003) (in an interference with contract action, declining to rule on a motion to preclude evidence of collateral legal disputes between the parties because in the absence of context, the court could not categorically conclude that such evidence is not relevant to matters raised by the case, nor could it properly weigh its probity).

If not, the Court should at least defer any ruling on the admissibility of subsequent remedial measures until there is a context where the Court can actually evaluate whether the offer is impermissible (e.g., to prove "culpable conduct" or "negligence"), or permissible (e.g., for "impeachment" or the "feasibility of precautionary measures.").   Fed. R. Ev. 407.   As noted above, Plaintiff has no intention to use such measures for direct liability, but may offer such measures if Defendants try to argue, for example, that better policies or training were not feasible.

## V.   Plaintff should be allowed to refer to the City's lawyers as what they are — "City attorneys" — and Defendants should not be allowed to mislead the jury about who will pay the verdict (responding to Point IV).

### A.  A bar on saying who the lawyers at trial represent is unwarranted.

Defendants' argument on this point ***begins*** by distinguishing its own cases.   As Defendants say, they cite cases "where the City was not a defendant."   D MIL at 9.   But here, the City is — without question — a defendant.   As set out above, the core of the remaining case is a *Monell* claim. None of the cases the City cites suggest that prohibiting saying who the attorneys at trial represent is appropriate:

- Defendants' own descriptions acknowledge this for *Hernandez v. Kelly*, No. 09-CV-1576 (TLM) (LB), 2011 U.S. Dist. LEXIS 57114, at *17-18 (E.D.N.Y. May 27, 2011)

14

and *Jean-Laurent v. Hennessy*,[8] 840 F. Supp. 2d 529, 550  (E.D.N.Y. Oct. 24, 2011).  But Defendants omit that the Court granted the relief "***[b]ecause*** the City of New York is not a defendant in this action."   840 F. Supp. 2d at 550 (emphasis added).

- Williams v. McCarthy, 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151, at *24-25 (S.D.N.Y. Oct. 25, 2007) literally grants the relief, again, "***[b]ecause*** the City had been dismissed from the case" (emphasis added);

- *Skinner v City of NY*, 2017 US Dist LEXIS 104650, at *6 (EDNY Apr. 7, 2017) likewise grants this relief "***because*** the City of New York is no longer a defendant in this action" (emphasis added).

Put directly, each case Defendants cite grants the relief they seek ***because*** of a condition that is indisputably not met here.  Moreover — and unaddressed in those decisions — there is no question here that the City is the real party in interest to the whole of the case.  *See generally,* P MIL at 3-5 (discussing how the City has never failed to indemnify a compensatory damages award against an NYPD officer represented by City lawyers).

Further, the individual officers and non-defendant officers involved in these incidents were all members of the NYPD.  It would be absurd to proceed to trial in this case without any reference to the affiliation of the alleged perpetrators and their associates.  Or, indeed, the policies, and so on.  Such contextual evidence is of consequence to the determination of the case because it "fill[s] in the background of the narrative and gives it interest, color, and lifelikeness." 1 Kenneth S. Broun, et al., *McCormick on Evidence* § 185 (7th ed. 2013), *citing Old Chief v. United States*, 519 U.S. 172, 187-88 (1997).

Finally, at least in the *Monell* phase, the jurors ***will*** know the lawyers representing the City are — put simply — City lawyers.  They will also obviously know that otherwise.  So it is not clear what point there is to the motion, other than to create bars for the Court, the lawyers, and the witnesses to trip over throughout the trial.

So, on this, Defendants' "deep pocket" concerns do not amount to any *undue* prejudice, because the deep pocket ***will*** be paying any judgment.  Moreover, any "deep pocket" concerns can be

---

[8] Defendants cite Lexis, but the case is in F. Supp. 2d.

addressed with an instruction to the jury that it should not consider the City's status as a defendant in the case in its findings on compensatory damages.  *See Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.*, No. 13-CV-11544, 2015 WL 4934628, at *11 (E.D. Mich. Aug. 18, 2015) (holding that a limiting instruction would allay any concerns that the jury would consider the defendant's deep pocket).

> ### B. If the Court denies the relief sought in Point III of Plaintiff's motion *in limine*, Plaintiff should be allowed to clarify the realities of indemnity if Defendants open the door.

At present, Plaintiff has no intention to directly mention indemnity.  However, if Defendants open the door by attempting to elicit sympathy for an individual officer-defendant, it is important context that such officers all but *never* pay judgments.  *See* Dkt. Nos. 188-2 at 6 (stating "no cases" were responsive to a request asking to identify any case where the City failed to indemnify for compensatory damages after City representation); 188-3; *see generally* P MIL at 3-5.  The City's proffer on this — that Defendants "do not expect to proffer evidence regarding their personal financial resources or ability to pay damages at trial" (D MIL at 11) — goes some distance in the right direction, but not all the way.  It is not just evidence about personal finances that creates a concern, but the kinds of arguments aimed at saying its unfair to hold *individuals* liable at all — and that a verdict would be a massive burden (even without specific mention of finances) for an individual officer.  Absent such arguments, or some other suggestion that the individual would ever have to pay a judgment, however, Plaintiff has no intention to present evidence of the (undisputed) fact that the City always indemnifies.

> ### VI. Plaintiff should be allowed to suggest a specific dollar figure to the jury (responding to Point V).

Plaintiff's basic argument on this point is presented in his own motion *in limine*, and for those basics, he incorporates that argument by reference.  *See* P MIL at 12-13.

Defendants' argument does not present a reason to disallow mentioning numbers in *this* case.  As a starting point, Defendants' argument here is problematic because it relies almost exclusively on *Consorti*.  *See* D MIL at 12, *citing Consorti v. Armstrong World Industries, Inc.*, 72 F.3d 1003, 1016 (2d Cir.

1995). Whatever the *Consorti* Court may have said in dicta — which Defendants cite — the Circuit's clear rule two years later in *Lightfoot* remains the state of affairs: There is no "per se rule prohibiting counsel from suggesting a specific sum as damages." *Lightfoot v Union Carbide Corp.*, 110 F3d 898, 912 (2d Cir 1997) (affirming trial verdict where jury awarded exactly half of the sum suggested by counsel). Moreover, "[c]ontrary of the defendants' [implicit] argument, it does not appear that the trend has been toward the banning of plaintiffs from requesting specific amounts of non-economic damages." A*dames v G.B. Rests. Inc.*, 2014 US Dist LEXIS 134771, at *9 (WDNY Sep. 24, 2014) (also noting that, like here, "defendants have not cited a case since 1995 precluding the plaintiffs from making such a request."). In other words, *Consorti* was quickly limited on publication, but its application has been significantly limited.

Finally, Defendants arguments, even on their own terms (that is, that the reason to prevent mentioning numbers is anchoring), fail here because the jury will *already be anchored*. That is, concerns about anchoring might counsel against allowing a specific sum to be spoken may have some force in the ordinary course. As the *Consort* dicta explains, "suggestions anchor the jurors' expectations of a fair award at a place set by counsel" and the jury may then "infer that counsel's choice of a particular number is backed by some authority or legal precedent." *Consorti*, 72 F3d at 1016. But those concerns cut the exact opposite way here.

Because the heart of this case is a *Monell* claim about the City's playbook for policing protests, the jury will hear about — as the Court previewed on summary judgment — "the number and persistence of legal challenges brought, sometimes resulting in plaintiffs' verdicts and other times in settlements," along with (presumably) the contents of those verdicts and settlements. *Case*, 408 F Supp 3d at 328. That will include, obviously, the jury hearing the contents of both the "plaintiffs' verdicts" and the "settlements." In other words, the jury will already be anchored.

So having counsel present numbers here not only won't **cause** anchoring, it is essential to counteract the anchoring effect of various settlements and verdicts the jury will already hear about.[9] Just as it might for a number spoken out loud, a jury may "infer that counsel's choice of a particular number is backed by some authority or legal precedent" when it is written on a settlement as well. *Consorti*, 72 F3d at 1016.  But of course, neither is true:  Settlements simply represent the figure at which both parties were sufficiently unhappy.  And to address the undue anchoring that will inevitably take place from the jury seeing a history of the amount similar cases have *settled* for, Plaintiff should be allowed to discuss numbers.  In fact, the exact concerns and reasoning Defendants use to argue **against** allowing counsel to offer specific numbers favor allowing it here given the unique circumstances of this case.

**VII.** **Plaintiff should be allowed to present relevant disciplinary history, personnel files, and individual lawsuit history (responding to Point VI).[10]**

Defendant Esposito was Chief of the NYPD for many years, and he was a NYPD member for many years before that.  Although all of the documents disclosed in the litigation regarding his NYPD complaint, investigation, and disciplinary history are confidential pursuant to the protective order in the case, documents exist that Plaintiff believes relate to potential prior bad acts that may be relevant and appropriately the subject of examination during trial.  In addition, Defendants' response to an interrogatory asking them to identify prior lawsuits involving allegations of, *inter alia,* abuse of lawful authority, false swearing, false arrest, or malicious prosecution was almost two full pages long. Many of the cases included are those listed in ¶ 26 of the SAC, which involve events including prior bad acts involving false arrests and misconduct at protests similar to the misconduct giving rise to this lawsuit.

---

[9] And of course, the financial scale of those settlements are critical in evaluating the **weight** those settlements should receive as something the City should have taken notice of and changed its policies — but did not.

[10] Defendant Maldonado has no disciplinary history Plaintiff is currently aware of that they intend to inquire about, so Plaintiff believes that portion of this motion will likely be moot.  The motion Defendants are making, as Plaintiff understands it, is really about Defendant Esposito's disciplinary history and lengthy individual lawsuit history.

While "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). "The Second Circuit evaluates Rule 404(b) evidence under an 'inclusionary approach' and allows evidence 'for **any purpose** other than to show a defendant's **criminal** propensity.'" *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002) (*quoting United States v. Pitre*, 960 F.2d 1112, 1118 (2d Cir. 1992)) (emphasis added).  Per that "inclusionary approach," courts "admit evidence of prior bad acts if the evidence 'is relevant to an issue at trial other than the defendant's character, and if the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice.'"  *Id.* (*quoting Tubol*, 191 F.3d at 95).  Specifically here, "[e]vidence of complaints against police officers may be admissible under FRE 404(b) where the offering party demonstrates that the complaints share 'unusual characteristics' with the conduct at issue so as to 'represent a 'unique scheme.'"  *Nibbs v. Goulart*, 822 F. Supp. 2d 339, 349 (S.D.N.Y. 2011) (*quoting Berkovich v. Hicks*, 922 F.2d 1018, 1023 (2d Cir. 1991)).

Against that backdrop, there is little question, on Plaintiff's view, that some of Defendant Esposito's disciplinary and litigation history meets the relevant 404(b) test.   On this point, however, as elsewhere with respect to Defendants' motions *in limine*, Defendants' boilerplate papers offer no meaningful information about which aspects of Defendant Esposito's disciplinary history, prior bad acts, or lawsuit history they seek to preclude.  Defendants include no specific analysis of any particular history or litigation, or analysis of whether any disciplinary history litigation, or prior bad act involves similar or dissimilar characteristics to their conduct here.   The Court should therefore deny Defendants' motion on this point.

To the extent Defendants move to preclude Plaintiff from introducing evidence from or regarding "personnel files" – it is not clear to Plaintiff what Defendants are referring to.  Beyond that,

Defendants resisted discovery of "personnel files" aside frtom some documents regarding the training Defendant Maldonado had received in topics relevant to protest policing, disorderly conduct arrests, and other, similar topics.  Those training records – which Defendants do not appear to be specifically moving to exclude - are relevant to establishing the nature and extent of Defendant Maldonado's training in topics relevant to Plaintiff's core constitutional, as well as his *Monell,* claims.

## VIII.     Plaintiff has no intention to discuss "unrelated" claims of misconduct, but Defendants' view of what is related is unduly narrow (responding to Point VII).

Although Plaintiff has no intention of discussing "unrelated" claims of misconduct or criminal investigations, it is not clear to Plaintiff which misconduct claims or investigations Defendants are referring to, and Plaintiff and Defendants have very different ideas about what is and is not "related." As discussed in the preceding point, Defendant Esposito has a lengthy history of litigation involving claims of misconduct similar to the claims in this case, which Plaintiff believes is "related."  Setting that aside, it is simply not possible for Plaintiff to respond meaningfully to Defendants' application on this point, beyond flatly opposing it, because Defendants' arguments are too general.

To the extent Defendants argue Plaintiff should be barred frtom using terms like "testilying" and "blue wall of silence" – the Court should reject Defendants' invitation to restrict Plaintiff's use of such common colloquialisms and the speculative arguments Defendants offer in support of them. Particularly here, in a case involving claims that Defendant Maldonado lied in police paperwork and criminal court charging records based on orders from superior officers involved in the NYPD's special protest arrest processing practices, using phrases like "testilying" and "blue wall of silence" – among others – would not be untuly prejudicial or inflammatory.  At least not categorically so. On this point, Plaintiff respectfully submits that "[i]t would be imprudent, however, to preclude the use of particular words or phrases in advance of trial. This is a matter that can be adequately addressed during the conduct of the trial." *Gogol v City of NY*, 2017 US Dist LEXIS 221874, at *17 (SDNY Sep. 26, 2017).

IX. **NYPD policies and procedures are relevant both on the *Monell* case and outside it (responding to Point IX).**[11]

Plaintiff has no intention of arguing to the jury that any violation of the NYPD's Patrol Guide necessarily translates to a constitutional violation. However, Plaintiff should be permitted to question Defendants Esposito and Maldonado, as well as the other NYPD witnesses who will be called to testify, as to the Patrol Guide's rules and procedures concerning probable cause to arrest, protest policing, disorderly conduct, arrest procedures and processing, and the proper documentation of officers' activities and arrests. A blanket prohibition to testimony about NYPD policies and procedures would be inappropriate as NYPD procedures and related training are directly relevant to the facts of this case and the "Patrol Guide has frequently been accepted as evidence of the standard of care to be exercised by a police officer." *Smith v. City of New York*, 2015 WL 4643125, at *3 (S.D.N.Y. Aug. 5, 2015) (citing *Cerbelli v. City of New York*, 2008 WL 4449634, at *1–25 (E.D.N.Y. Sept. 8, 2008), *aff'd without objection*, 2008 WL 4449634, at *1 (E.D.N.Y. Oct.1, 2008)); *see also Tardif v City of NY,* 2022 US Dist LEXIS 109318, at *11 (SDNY June 20, 2022) (allowing Patrol Guide evidence at trial regarding excessive force claim); *Tardif v City of NY*, 2017 US Dist LEXIS 135607, at *18-19 (SDNY Aug. 23, 2017) ("Whether the officers violated the NYPD Patrol Guide remains a significant factor to be considered in ultimately determining whether the officers' actions that day were reasonable and subject to qualified immunity") (citing *Smith*); *Tardif v City of NY*, 344 F Supp 3d 579, 608 (SDNY 2018) ("The NYPD Patrol Guide is relevant to the question of whether the Defendants behaved reasonably"); *Nnodimele v. Derienzo*, 2016 WL 3561708, at *14 (E.D.N.Y. June 27, 2016) (permitting plaintiff to introduce evidence concerning the Patrol Guide at trial because "[i]n constitutional tort cases, expert testimony regarding sound professional standards governing a

---

[11] Defendants say this point is "made in conjunction with defendants' motion to bifurcate and with regard to any portion of the trial in which claims against the City would not be directly at issue." D MIL at 18 n. 7. Plaintiff understands this to mean that Defendants have no objection, if the case is not bifurcated, to evidence of policies and procedures through Plaintiff's case. This point therefore only addresses why NYPD policies and procedures are relevant evidence even if the *Monell* claims are bifurcated.

defendant's actions can be relevant and helpful." (quoting *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013))).

Defendants' argument otherwise relies on two out of Circuit cases, and a state court decision that is not on point.  *See,* D MIL at 19.  Here, outside of direct *Monell* liability, Plaintiff intends to use of the NYPD Patrol Guide and other evidence of procedures (1) as evidence of the standard of care that should be exercised by reasonable officers and (2) as evidence related to Plaintiff's damages (e.g., that Plaintiff was arrested and subjected to certain processes, which he would not have been if he was not arrested).  That is readily distinguishable from all the cases Defendants cite:

- *Smith v. Freland*, involved a claim for a City's failure to discipline an officer for allegedly violating the policies of the local police force, and found that violation of local policies does not establish a *per se* constitutional claim — it certain does not categorically hold "NYPD guidelines are irrelevant to the determination of whether Plaintiff's constitutional rights were violated" as Defendants seem to say it does, and says nothing about admissibility.  *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992).

- The same exact problem exists with *Romero v. County of Lake*, 60 F.3d 702, 705 (10th Cir. 1995).

- Defendants affirmatively misstate[12] the holding of *Galapo v City of NY*, 95 NY2d 568, 571 (2000).  They say it holds "NYPD Patrol Guide should be **excluded from evidence** because it does not create legal duties."  D MIL at 19 (emphasis added).  In fact, *Galapo* does not discuss evidentiary standards at all.  Rather, like *Smith* and *Romero*, it stands for the uncontroversial principle that a violation of the "Patrol Guide could not serve as a **basis** for liability" — not that it never has any relevance.  95 NY2d at 572 (emphasis added).  That is, the case rejects violation of Patrol Guide provisions as a "foundation for monetary damage lawsuits."  *Id.* at 575 (emphasis added).

In short, Defendants do not cite a single case for the proposition they advance — that "NYPD guidelines are **irrelevant**" and that the "NYPD Patrol Guide should be **excluded from evidence**."  D MIL at 19 (emphasis added).  Indeed, they don't cite a single case that discusses evidence or relevance at all.  Since Defendants misstate what the cases say, the conclusion they offer does not follow.

---

[12] The word "exclude" does not appear anywhere in the decision.  The word "evidence" and its cognates appear three times, but it is used discussing the "circumstantial evidence" of an unrelated fact at trial, having nothing to do with the Patrol Guide.

Further, contrary to defendants' assertion that the jury would be likely to conflate the guidelines set out by NYPD procedures with constitutional standards for determining civil liability, juries are presumed to — and do — follow limiting instructions given by the Court.  If the Court gives appropriate limiting instructions, such instructions would eliminate any confusion as to the standard by which they are to evaluate whether Plaintiff's rights were violated.

Further, as multiple defendant witnesses have testified previously and will testify in this matter pursuant to Fed.R.Civ.P. 30(b)(6), it is crucial that they be allowed to discuss the NYPD's policies, practices, and training in November of 2011, especially as they relate to the specific issues in this case.

Here, three fundamental, intertwining questions for the jury are (1) whether Defendants had probable cause to properly effectuate Plaintiff's arrest, (2) whether defendants violated any constitutional rights of Plaintiff – including Plaintiff's fair trial rights (by fabricating evidence in police paperwork and criminal court charging documents), and (3) whether the City of New York is liable on a *Monell* theory on the false arrest claim based on its failure to train the defendant officers on protest policing, arrest procedures, and subsequent processing.  In that context, two major questions for the jury will be whether Defendants and their witnesses did what they were supposed to do according to their policies and training and whether they are telling the truth about the material events.  So, as in *Nnodimele*, "Patrol Guide evidence is admissible" because, as a "a growing number of courts" have observed, it provides evidence about "sound professional standards governing a defendant's actions" that "can be relevant and helpful." 2016 US Dist LEXIS 83357, at *47.[13]  While violations of the Patrol Guide are not necessarily proof of a constitutional violation, defendants' compliance or non-compliance with the Patrol Guide is a relevant factual inquiry at trial, including

---

[13] *See also, Collado v. City of New York*, 2017 WL 4533772, at *3 (S.D.N.Y. Sept. 27, 2017) ("Although a violation of the Patrol Guide is not necessarily a violation of constitutional rights just as a violation of constitutional rights is not necessarily a violation of the Patrol Guide, the Patrol Guide is relevant for the same reasons as evidence of lesser degrees of force Connolly could have used. It is relevant in determining how a reasonable officer might comport himself under the circumstances."); *Gogol v. City of New York*, No. 15-CV-5703, 2017 U.S. Dist. LEXIS 221874, 2018 WL 4616047, at *4 (S.D.N.Y. Sept. 26, 2018) (admitting Patrol Guide excerpts, subject to further relevancy determinations, as relevant to question of reasonableness); *Bermudez v City of NY*, 2019 US Dist LEXIS 3442, at *14 (EDNY Jan. 8, 2019) (denying same motion made here); *Lubecki v. City of New York*, 304 A.D.2d 224, 234-35, 758 N.Y.S.2d 610, 618 (App. Div. 2003).

on questions of whether and how police filled out required paperwork, as well as questions going more directly to credibility, and, therefore, the contents of certain Patorl Guide provisions is a matter of consequence in determining the reasonableness of defendants' actions in connection with Plaintiff's claims.

In examining these witnesses, plaintiff should be able to inquire into whether the witnesses' claimed conduct would comport or conflict with NYPD rules and regulations. Such testimony would provide a jury with a reasonable basis to credit or reject such claims by the witnesses. Whether individual Defendants or defense witnesses were acting in compliance with departmental guidelines are factors which the jury should be permitted to consider in determining the credibility of the officers and the reasonableness of their actions. *Cf. Henderson v. City of New York*, 571 F. App'x 42 (2d Cir. 2014) (non-compliance with Patrol Guide was a basis for jury to conclude defendants had retaliated against plaintiff in employment action). Accordingly, plaintiff should be permitted to reference the Patrol Guide's relevant rules and regulations governing police conduct at trial.

## X. <u>Defendants' request to amend the caption to exclude the City is waived (responding to footnote 8).</u>

Defendants "respectfully submit that the caption should not include the City of New York" if the Court bifurcates the trial. D MIL at 20 n. 8. That argument presents no reasoning, and is made only in a footnote. That waives the argument. Courts in this Circuit "routinely decline to consider arguments mentioned only in a footnote on the grounds that those arguments are inadequately raised." *Fin. Guar. Ins. Co. v Putnam Advisory Co., LLC*, 2020 US Dist LEXIS 9088, at *5 (SDNY Jan. 17, 2020) (alteration accepted) (collecting cases). Put simply, an argument can and should be found waived when it "appears … only in a footnote stating the proposition conclusorily in a single sentence." *Tolbert v. Queens Coll.*, 242 F.3d 58, 76 (2d Cir. 2001).

Beyond that, the City should remain in the caption regardless of bifurcation because even if the Court bifurcates the municipal liability claims, the City is still a defendant in, and, effectively, the

real party in interest in, the case.  Again, for much the same reason the Court should not allow Defendants to mislead the jury to suggest individual officers would have anything to do with paying a damages award, it should not provide the City cover to pretend it is not the driving force behind the defense of this case.

Past there, once the *Monell* phase began, it would also be confusing to the jury for the caption to suddenly change.  Indeed, that might create some sense they had been misled — and lead jurors to try to figure out whether there were other issues concealed from them.

**CONCLUSION**

For all the reasons discussed above, Plaintiff Kushneir respectfully requests the Court deny Defendants' motion *in limine*, except on those issues noted above as points of agreement.

Dated:     May 6, 2023
          Brooklyn, New York

                     Respectfully Submitted,

                     **COHEN & GREEN P.L.L.C.**

                     /s/
                _____
                     **BY:**     J. Remy Green

                     1639 Centre St., Suite 216
                     Ridgewood, New York 11385
                     t : (929) 888-9480
                     f:  (929) 888-9457
                     e:  remy@femmelaw.com

                     _____
                     **GIDEON ORION OLIVER**
                     277 Broadway, Suite 1501
                     New York, NY 10007
                     t: 718-783-3682